[Nos. A059820, A060525. First Dist., Div. Five. Aug. 25, 1994.]

COUNTY OF CONTRA COSTA, Plaintiff and Appellant, v.
PINOLE POINT PROPERTIES, INC., Defendant and Appellant;
BETHLEHEM STEEL CORPORATION, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of section II.A.1.b. and section II.A.2. through II.A.4.*

**1108**

**COUNSEL**

Victor J. Westman, County Counsel, Silvano B. Marchesi, Assistant County Counsel, Crosby, Heafey, Roach & May, John A. Reding, John E. Carne and Kathy M. Banke for Plaintiff and Appellant.

Berg, Ziegler, Anderson & Parker, James M. Berg, F. Gale Connor and Douglas A. Applegate for Defendant and Appellant.

Paul O. Lamphere for Defendant and Respondent.

## OPINION

**PETERSON, P. J.**—This appeal arises from an action in eminent domain brought by the County of Contra Costa (County) to condemn, for use in constructing a new county jail, 51 acres of property located in North Richmond. The property itself was owned by Pinole Point Properties, Inc. (Pinole Point), while mineral and hydrocarbon rights on the property were owned by Bethlehem Steel Corporation (Bethlehem). On trial to determine the amount of just compensation the County would pay, a jury awarded Pinole Point $6,381,050 and Bethlehem $200,000. Pinole Point now appeals from the ensuing judgment claiming (1) its ability to impeach a critical witness was improperly restricted, (2) opposing counsel committed misconduct during final argument, (3) the court instructed the jury improperly, and (4) certain evidence was erroneously admitted at trial. County also appeals, claiming the trial court erred when it awarded Bethlehem its litigation expenses. We conclude Pinole Point's arguments are either unpersuasive or not prejudicial and will affirm that portion of the judgment in every respect. However, County's arguments are well taken; and therefore, we will reverse the award of expenses.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 1969, Bethlehem owned approximately 1,700 acres of property located in North Richmond. To determine whether the property had any oil or gas resources, it drilled two exploratory wells on the property. The first well was dry and was capped almost immediately; however, the second well produced some oil and gas, although not enough to be commercially viable, so it too was capped.

About 10 years later, Bethlehem sold 548 acres of the property to Pinole Point, reserving to itself the rights to all minerals and hydrocarbons more than 500 feet below the surface. Bethlehem also reserved two 2-acre "drill sites," several underground easements, and a floating surface easement which permitted access to the drill sites.

About eight years later, County filed a condemnation action to take approximately fifty-one acres of Pinole Point's property for construction of a new jail. The 51 acres condemned (subject property) included a portion of Bethlehem's subterranean mineral rights, one of its drill sites, and portions of its underground easements. Since the County needed to proceed with the project immediately, it hired appraisers who estimated the property was worth $4,412,300, deposited that amount as probable compensation, and obtained an order allowing it to take immediate possession of the property. The County then built a new jail on the subject property.

At the subsequent compensation trial, Pinole Point claimed it was entitled to approximately $13 million. First, it urged that the highest and best use of the subject property was a premier business park, and that its fair market value was between $8.4 and $8.8 million. Second, it claimed severance damages contending that the presence of the new jail depressed the value of its remainder property; and on a "compaction" theory, that future development of its remainder property would require infrastructure improvements, the cost of which, but for the condemnation, would have been spread over the entire property of 548 acres, but now would be totally absorbed by the fewer acres of the remainder, rendering it less valuable to a willing buyer. Pinole Point contended the value of its remainder property was diminished by approximately $4 million, i.e., $2 million damages for depressed value and $2 million for this "compaction" of development costs.

The County contended that the highest and best use of the remainder property was large tract industrial rather than a business park, and that its fair market value was $6,358,000. The County maintained no severance damage attached to the remainder property because the presence of the jail did not depress its value (a conclusion it supported with an analysis of property values near a similar facility which had been built in Santa Clara); and because no additional future costs of development shifted to the remainder property depressing its value post condemnation.

The evidence concerning the value of Bethlehem's oil and mineral rights was equally contradictory. Bethlehem argued the value of its interests should be calculated as a percentage of the property's total value; and using that method, it claimed it was entitled to $3,354,000 in compensation. The County, by contrast, claimed the oil and mineral rights were essentially worthless because the property had never produced commercially viable amounts of oil.

After hearing this evidence, a jury returned a verdict awarding Pinole Point $6,381,050 and Bethlehem $200,000. The present appeals followed.

II. DISCUSSION

A. *Pinole Point's Appeal*

1. *Restriction of Valuation Testimony*

Pinole Point claims the trial court improperly prevented it from challenging the County's valuation testimony in two respects. We address these arguments separately.

a. *Cross-examination of Clevenger*

As we noted, the County deposited $4,412,000 in probable compensation after filing its complaint so it could take possession of the property immediately and proceed with the jail project. The amount of the deposit was

based on information provided by two independent appraisers, Floyd Clevenger and Hector Leslie. Both concluded Pinole Point was entitled to compensation for the property taken *and* for severance damage to its remaining property. However, because Leslie's $4,412,000 figure was higher then Clevenger's $3,591,000 estimate, the County used Leslie's appraisal as the basis for the deposit.

The County subsequently called Clevenger as its witness at trial; and he testified the property was worth $6,358,000, or nearly twice as much as he had previously estimated. Two factors contributed to this disparity. First, Pinole Point had sold a portion of its remaining property to United Parcel Service in the interim, so Clevenger was able to use that sale to value the property more accurately and to calculate any "compaction" damages Pinole Point may have sustained. Second, the initial $3,591,000 appraisal included $1.7 million in severance damages which Clevenger had calculated by assessing the impact of the taking on several specific development plans. However, after Clevenger had made his calculations, Division Two of this court issued *Contra Costa Water Dist.* v. *Bar-C Properties* (1992) 5 Cal.App.4th 652, 657-658 [7 Cal.Rptr.2d 91] (*Bar-C*), and ruled the method of valuation Clevenger used was too speculative to serve as the basis for a condemnation award. Clevenger apparently eliminated this item of compensation in light of the *Bar-C* ruling and testified at trial that Pinole Point was not entitled to severance damages.

Pinole Point then tried to impeach Clevenger on the severance damage point by using the $1.7 million figure he established in the appraisal he had prepared to support the County's deposit for purposes of securing immediate possession of the subject property. The trial court refused to allow this impeachment, ruling it inadmissible under Code of Civil Procedure[1] section 1255.060, subdivision (b) which states, "In the trial of the issue of compensation, a witness may not be impeached by reference to any appraisal report, written statement and summary of an appraisal, or other statements made in connection with a deposit or withdrawal pursuant to this chapter, nor shall such a report or statement and summary be considered to be an admission of any party."

Pinole Point now challenges the court's ruling on two grounds. ▉ It first claims the evidence does not support the conclusion that Clevenger prepared his earlier report "in connection with" the eminent domain deposit as required by section 1255.060, subdivision (b). We disagree. As with any substantial evidence review, our task is to determine whether there is any evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact (*Crawford* v. *Southern Pacific Co.* (1935) 3

---

[1]All subsequent statutory references are to the Code of Civil Procedure.

Cal.2d 427, 429 [45 P.2d 183]); and here, the record shows County commissioned two appraisals, by Leslie and Clevenger, and then made its deposit based on the higher of the two. Based on this evidence, the court could reasonably conclude that Clevenger prepared his report "in connection with" the original deposit. While the record also includes evidence which would have supported a contrary ruling, none of it is relevant on a substantial evidence review.

Second, Pinole Point argues that, even if section 1255.060, subdivision (b) generally prohibits the use of a deposit appraisal to impeach a witness, the County waived that privilege when it called Clevenger as its valuation witness at trial. This argument raises a matter of some concern. A landowner is constitutionally entitled to compensation when his land is taken (Cal. Const., art. I, § 19), and case law has long emphasized that an appraiser may be impeached with a prior inconsistent opinion (see, e.g., *San Diego Land etc. Co. v. Neale* (1891) 88 Cal. 50, 67 [25 P. 977]; *State of Cal.* ex rel. *State Pub. Wks. Bd. v. Stevenson* (1970) 5 Cal.App.3d 60, 65 [84 Cal.Rptr. 742]). Since the essence of a condemnation action is to determine the fair market value of condemned property, a rule which prohibits a landowner from questioning a witness about a prior inconsistent opinion interferes with the constitutional right to compensation in a very fundamental way. This concern is shared by at least one commentator who questioned whether section 1255.060, subdivision (b) can validly be applied in this context. (See 14 Cal. Real Estate Law & Practice (1994) Prejudgment Possession, § 505.06, p. 505-10 ["If the plaintiff calls the person who made [the] appraisal report or summary [for purposes of supporting the condemner's deposit of funds for immediate possession of the property], denial o[f] cross-examination based on the summary might be a violation of the constitutional rights of due process and just compensation."].) If the condemner elects to present the jury with an expert witness whose opinion previously expressed and sought by that condemner for purposes of a condemner's deposit differs from the valuation testimony before the jury, that witness, it would seem, should be subject to the cross-examination expert witnesses customarily receive. Nothing produces the truth for fact finders weighing conflicting expert testimony better than vigorous and full cross-examination of those witnesses.

Our concern about this application of section 1255.060 is buttressed by the statute's legislative history. Former section 1243.5, subdivision (e) prohibited the parties from mentioning at trial the amount of the security deposit. (See Stats. 1961, ch. 1613, § 2, pp. 3443-3444.) The purpose of the rule was to encourage condemning agencies to make adequate deposits by eliminating the possibility that deposit appraisals could be used against them at trial. However, courts interpreted the language of former section

1243.5, subdivision (e) narrowly and ruled that, while the amount of the deposit was inadmissible, nothing in the statute prevented a landowner from calling as a witness at trial the appraiser who helped the condemning agency prepare its deposit. (See *People* ex rel. *Dept. Pub. Wks.* v. *Cowan* (1969) 1 Cal.App.3d 1001, 1006 [81 Cal.Rptr. 713]; *People* ex rel. *Dept. Pub. Wks.* v. *Douglas* (1971) 15 Cal.App.3d 814, 821-822 [93 Cal.Rptr. 644].) The California Law Revision Commission thought this interpretation of former section 1243.5, subdivision (e) "defeat[ed] the spirit of the rule" and recommended that the "loophole" be closed by enacting the current statute, section 1255.060. (See Recommendations Relating to Eminent Domain Law (Dec. 1975) 13 Cal. Law Revision Com. Rep. (1976) p. 1048.) ■ Thus section 1255.060 was enacted to prevent a *landowner* from calling the appraiser who helped the condemning agency prepare its deposit. Nothing in the legislative history suggests the statute was intended to protect a deposit appraiser when the *condemning agency* elects to call that appraiser as its valuation witness at trial. Accordingly, we hold that, when a condemner calls an expert witness to testify at trial to valuation of the subject property, section 1255.060, subdivision (b) does *not* proscribe his impeachment by use of an appraisal that the witness theretofore made in connection with the condemner's deposit for pretrial possession of that property.

■ The record discloses, however, that the lower court's contrary ruling was not pivotal in this case. Despite the court's ruling, Pinole Point was able to get Clevenger's severance damage opinion in front of the jury. Clevenger testified under cross-examination that he had previously held the opinion the property had suffered substantial severance damages. He also explained that that opinion was based on a plan-specific, small parcel analysis, and why his opinion had changed. The County's engineer, Paul Reimer, also admitted on cross-examination that he had prepared two site specific development plans and that, under those plans, Pinole Point's property suffered an additional $1.5 million in development costs. Pinole Point then highlighted this testimony during final argument as supporting its claim for severance damage. Thus, the same evidence Point Pinole argues should have been admitted was, in fact, admitted. In this context, the court's ruling under section 1255.060 was not critical. Any possible error was harmless. (See *Estate of Fisher* (1927) 202 Cal. 205, 213 [259 P. 755]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 339, p. 346.)

b. *Rebuttal of Clevenger**

. . . . . . . . . . . . . . . . . . .

*See footnote, *ante,* page 1105.

2.-4.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### B. *County's Appeal*

After the jury awarded Bethlehem $200,000 for its oil and gas interests, it filed a motion asking to be awarded its litigation expenses under section 1250.410.[3] Under that section, a condemning agency and landowner are required to exchange final settlement offers at least 30 days prior to trial. If, after judgment, the court should conclude the condemning agency's final offer was unreasonable and the landowner's demand was reasonable in light of the evidence offered at trial and the compensation awarded, the landowner is entitled to its litigation expenses. Here, Bethlehem argued the County's final offer, to reconvey the oil and mineral rights which had been taken and to provide alternate access to the property, was unreasonable; and that its demand, $1 million, was reasonable. The trial court agreed and awarded Bethlehem $256,992.28 in litigation expenses. ▮▮ ▮▮ The County now challenges this ruling on appeal, arguing Bethlehem did not satisfy either requirement of section 1250.410, because its pretrial offer was reasonable and Bethlehem's demand was unreasonable.

▮▮ The County's first argument has significant merit. The County offered to reconvey to Bethlehem the same oil and mineral rights which had been taken and to provide it with alternate access to the property. Since the effect of the offer would be to leave Bethlehem with the same rights it possessed before the condemnation, it is difficult to see how the offer could not be considered reasonable.

Bethlehem argues the County's offer was unreasonable because it did not include any amount to compensate it for the litigation expenses it had incurred up to that point; however, the County was not required to consider this expense under the applicable statutory framework. The exchange contemplated by section 1250.410 occurs very late in a condemnation action: as little as 30 days before trial. In the normal case, a landowner will have incurred considerable expense defending the action. Yet section 1250.410 only states the parties are obligated to exchange demands and offers of "compensation," not "compensation including litigation expenses." We see

---

*See footnote, *ante*, page 1105.

[3]Section 1250.410 states, in part, "(a) At least 30 days prior to the date of the trial on issues relating to compensation, the plaintiff shall file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff its final demand for compensation in the proceeding. . . . [¶] (b) If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses."

nothing in the statute which suggests the County was required to consider Bethlehem's attorney fees when formulating its offer.

However, we need not base our decision on the first requirement of section 1250.410 because Bethlehem failed to satisfy the second; its $1 million demand simply was not reasonable in the context of this case.

The courts have developed guidelines to help determine whether a demand is reasonable. These are (1) the difference between the demand and the compensation awarded, (2) the percentage of difference between the demand and the award, and (3) the good faith, care, and accuracy with which the demand was calculated. (*Glendale Redevelopment Agency* v. *Parks* (1993) 18 Cal.App.4th 1409, 1415-1416 [23 Cal.Rptr.2d 14]; see also *City of San Leandro* v. *Highsmith* (1981) 123 Cal.App.3d 146, 156 [176 Cal.Rptr. 412].) While the question of reasonableness is typically one of fact, as with any finding by a trial court, "if the uncontradicted evidence permits only one conclusion, the issue is legal, not factual [citation]." (*Lake County Sanitation Dist.* v. *Schultz* (1978) 85 Cal.App.3d 658, 667 [149 Cal.Rptr. 717].)

Here, Bethlehem's $1 million demand was a staggering $800,000 more than the actual award. This alone suggests the demand was unreasonable. Furthermore, the demand was five times greater than the actual award. In *San Diego Gas & Electric Co.* v. *Daley* (1988) 205 Cal.App.3d 1334, 1352 [253 Cal.Rptr.1447], the court ruled that statutory offers which were 23.5 and 29.4 percent of the eventual award were inadequate as a matter of law. The difference between the demand and the award in this case was proportionally greater. Finally, the oil and gas interests at issue had no proven value. Bethlehem itself had drilled two exploratory wells on the property nearly twenty years earlier and neither produced a commercially viable supply of oil. Bethlehem later told the Internal Revenue Service it knew of no "other oil, gas or other minerals in the vicinity of [the] Pinole Point property." Given this evidence, and the interplay of the three factors above, only one conclusion was possible. Bethlehem's $1 million demand was unreasonable.

III. DISPOSITION

The judgment awarding Pinole Point $6,381,050 is affirmed. The order awarding Bethlehem $256,992.28 in litigation expenses is reversed.

King, J., and Haning, J., concurred.

A petition for a rehearing was denied September 16, 1994, and the opinion was modified to read as printed above. The petition of appellant Pinole Point Properties, Inc., for review by the Supreme Court was denied November 17, 1994.