113 Cal.Rptr.2d 559 (2001)
93 Cal.App.4th 954
The PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff and Respondent,
v.
Bertrand H. WOODSON, as Trustee, etc., et al., Defendants and Appellants.
No. G024913.
Court of Appeal, Fourth District, Division Three.
November 14, 2001.
*560 Nossaman, Guthner, Knox & Elliott, K. Erik Friess and Michael W. Shonafelt, Irvine, for Defendants and Appellants.
William M. McMillan, David R. Simmes, Alexander D. DeVorkin, Los Angeles, and Amanda Edmunds DeJesus for Plaintiff and Respondent.

OPINION
MOORE, J.
The Department of Transportation (Caltrans) filed a complaint in eminent domain against Bertrand H. Woodson and Besse M. Woodson as trustees of the B.H. & B.M. Woodson Family Trust dated May 16, 1990 (Woodsons). The jury awarded the Woodsons $1,876,750 as just compensation for their property. This figure exceeded Caltrans's final offer by $476,750. Nonetheless, the Woodsons' motion for litigation expenses was denied. The Woodsons claim the trial court erred in denying their request for litigation expenses, because Caltrans's final offer of compensation was unreasonable. We agree, and reverse and remand.

I

FACTS
In furtherance of a freeway widening project, Caltrans sought title to the Woodsons' two-acre mobile home park. Caltrans filed a complaint in eminent domain. As trial approached, the Woodsons made a final demand of $1,695,000 pursuant to Code of Civil Procedure section 1250.410. Caltrans made a final offer of $1,400,000. The last business day preceding trial, Caltrans *561 made an ex parte application to continue the trial date. The motion was granted and the trial was ultimately rescheduled for three and a half months later. Before the trial date, the Woodsons made an amended final demand, in the amount of $1,795,000, because of increased trial preparation expenses on account of having had to prepare for trial twice.
The jury returned a verdict in the amount of $1,876,750. The Woodsons filed a motion for litigation expenses pursuant to Code of Civil Procedure section 1250.410. The motion was denied. The trial court held the criteria of section 1250.410 were not met. It found the Woodsons' final demand and amended final demand were reasonable. However, as implied in its ruling, the court determined Caltrans's final offer was reasonable as well. The Woodsons appeal, contending Caltrans's final offer was unreasonable.

II

DISCUSSION

A. Code of Civil Procedure section 1250410

Code of Civil Procedure section 1250.410, subdivision (a) requires the plaintiff in an eminent domain action to file its final offer of compensation at least 20 days prior to the scheduled trial date. It also requires the defendant to file its final demand for compensation within that same time period. Section 1250.410, subdivision (b) provides as follows: "If the court ... finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding," the defendant shall be entitled to litigation expenses. The Woodsons contend their final demand was reasonable but Caltrans's final offer was not. Caltrans does not challenge the reasonableness of the Woodsons' demand. It argues the court correctly found its offer to be reasonable, so the first requirement of section 1250.410, subdivision (b) is not met.
"Several factors have emerged as general guidelines for determining the reasonableness or unreasonableness of offers. They are `"(1) the amount of the difference between the offer and the compensation awarded, (2) the percentage of the difference between the offer and award ... and (3) the good faith, care and accuracy in how the amount of offer and the amount of demand, respectively, were determined."' [Citation.]" (Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp. (1997) 16 Cal.4th 694, 720, 66 Cal.Rptr.2d 630, 941 P.2d 809.) We will examine each of these factors in turn.

B. Mathematical Factors

Starting with the first factor, the absolute monetary difference between the final offer and the jury award, a disparity of $476,750 is certainly indicative of an unreasonable offer. Indeed, the Woodsons cite cases demonstrating that even smaller monetary differences have been found to show unreasonableness. (See, e.g., City of Commerce v. National Starch & Chemical Corp. (1981) 118 Cal.App.3d 1, 12, 19-20, 173 Cal.Rptr. 176 [$162,753.25 absolute monetary difference unreasonable]; Lake County Sanitation Dist. v. Schultz (1978) 85 Cal.App.3d 658, 667-668, 149 Cal.Rptr. 717 [$60,775 absolute monetary difference unreasonable]; County of Los Angeles v. Kranz (1977) 65 Cal.App.3d 656, 659, 135 Cal.Rptr. 473 [$16,077.55 absolute monetary difference unreasonable].)
As for the second factor, proportionality, Caltrans's final offer was equal to only 74 percent of the jury award and this is also a sign of an unreasonable offer. As the Woodsons point out, proportionally higher *562 offers have been held unreasonable. (See, e.g., People ex rel. Dept. of Transportation v. Yuki (1995) 31 Cal.App.4th 1754, 1764-1766, 37 Cal.Rptr.2d 616 [offer of 77 percent unreasonable]; Community Redevelopment Agency v. Krause (1984) 162 Cal. App.3d 860, 865-866, 209 Cal.Rptr. 1 [offer of 82 percent unreasonable]; County of Los Angeles v. Kranz, supra, 65 Cal. App.3d at p. 659, 135 Cal.Rptr. 473 [offer of less than 80 percent unreasonable].) However, "[a] survey of cases indicates that final offers which are 60 percent or less of the jury's verdict are found to be unreasonable while offers which are above 85 percent have been considered reasonable per se. Those in the middle range, as in this case, can fall within either group, depending upon the other factors, particularly whether the government agency was unyielding and the extent of the `good faith, care, and accuracy in the method of determination of offer and demand.' [Citations.]" (People ex rel. Dept. of Transportation v. Yuki supra, 31 Cal.App.4th 1754, 1764, 37 Cal.Rptr.2d 616, fn. omitted.)
Caltrans notes that 74 percent is in the gray area. It also admits that the Woodsons' cases appear to support their position on the mathematical factors, but draws the court's attention to San Diego Metropolitan Transit Development Bd. v. Cushman (1997) 53 Cal.App.4th 918, 62 Cal.Rptr.2d 121. In that case, a final offer that was $261,797 less than, and equal to only 37 percent of, the award did not compel a finding of unreasonableness. The court acknowledged that the "mathematical relation" between the final offer and the award was only "one factor" for evaluation. (Id. at p. 933, 62 Cal.Rptr.2d 121; accord, Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp., supra, 16 Cal.4th at p. 720, 66 Cal.Rptr.2d 630, 941 P.2d 809.) It observed the parties had settled most of the lawsuit before trial, leaving only the issue of severance damages for resolution, and this indicated the parties had acted in good faith in attempting to settle. In addition, the severance issue had been left unresolved because of a legal issue arising in an uncertain area of the law. In the case before us, however, the parties had not settled most of their differences before trial and the legal issue in question, whether property may be valued without regard to restrictions imposed by an existing zoning ordinance, was not unsettled.

C. Good Faith, Care and Accuracy

Caltrans emphasizes that the California Supreme Court in Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp., supra, 16 Cal.4th at p. 720, 66 Cal.Rptr.2d 630, 941 P.2d 809, has cautioned lower courts against finding unreasonableness exclusively on the basis of the mathematical factors and has commended the lower courts in every case to consider also the good faith, care and accuracy factors. These are the factors on which Caltrans hangs its hat.
But Caltrans does not fare well on the care and accuracy front. Caltrans's appraiser opined the highest and best use of the property was its existing use, as a mobile home park, and valued the property at $1,188,000. The Woodsons' appraiser determined the highest and best use was as a self-storage facility, and valued the property at $1,876,750,[1] The problem with Caltrans's appraisal is that the mobile home park use was a nonconforming use that was specifically required by ordinance to be terminated.
*563 Buena Park Zoning Ordinance section 19.204.160 provides: "A mobilehome park ... which is nonconforming as to use shall be terminated within twenty years of the date of becoming nonconfomring." The Woodsons' appraiser testified the property was developed in the 1950's, was thereafter zoned N-l light industrial, and, in 1972, was finally zoned commercial manufacturing. He further testified the N-l light industrial and commercial manufacturing zoning classifications both exclude any residential uses and the mobile home park use had become nonconforming no later than 1972. Caltrans's appraiser, on the other hand, thought the property had been zoned commercial manufacturing as of the date of city incorporation in 1953, but she would not opine as to when the mobile home park use had become nonconforming. In any event, it is difficult to dispute that the use had become nonconforming at least by 1972. Applying section 19.204.160, the nonconforming use was required to be terminated no later than 1992. The question is whether it was proper to value the property as a mobile home park, in light of the ordinance.
Code of Civil Procedure section 1263.320, subdivision (a) provides: "The fair market value of the property taken is the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available." "[T]he general rule is that present market value must ordinarily be determined by consideration only of the uses for which the land `is adapted and for which it is available.'" (Long Beach City H.S. Dist. v. Stewart (1947) 30 Cal.2d 763, 768, 185 P.2d 585; People ex rel. Dept. Pub. Wks. v. Arthofer (1966) 245 Cal.App.2d 454, 462-463, 54 Cal.Rptr. 878.) Of particular significance here is the meaning of "available."
"[P]resent zoning is clearly an element of availability. [Citations.]" (People ex rel. Dept. Pub. Wks. v. Arthofer, supra, 245 Cal.App.2d at p. 467, 54 Cal.Rptr. 878; accord, People ex rel. State Public Works Bd. v. Talleur (1978) 79 Cal.App.3d 690, 695, 145 Cal.Rptr. 150.) Therefore, in valuing property, zoning restrictions may not be ignored. (Long Beach City H.S. Dist. v. Stewart, supra, 30 Cal.2d at p. 766, 185 P.2d 585; Los Angeles City H.S. Dist. v. Hyatt (1926) 79 Cal.App. 270, 272, 249 P. 221.) Put another way, only those uses for which the land is "available" may be considered (Long Beach City H.S. Dist. v. Stewart, supra, 30 Cal.2d at p. 768, 185 P.2d 585; People ex rel. Dept. Pub. Wks. v. Arthofer, supra, 245 Cal.App.2d at pp. 462-463, 54 Cal.Rptr. 878), and the land is not "available" for purposes which contradict zoning restrictions.
Caltrans's appraiser admitted the mobile home park use was a nonconforming use and she also admitted that it was improper to value the property for a legally impermissible use. However, she was inclined to think the nonconforming use was a legal nonconforming use. In support of her position, she stated she had seen a similar ordinance enforced only once. Caltrans adds that none of the City of Buena Park city planners specifically told the Woodsons' appraiser the use was illegal. Caltrans's appraiser also mentioned that nonconforming uses are not uncommon in Orange County and 40 to 50 percent of the comparable mobile home park sales she used were nonconforming. But these arguments miss the point. The issue is not *564 whether the City of Buena Park would have taken action to shut down the mobile home park had Caltrans not completed the condemnation proceedings or whether there are other mobile home parks in Orange County that constitute nonconforming uses in their respective locales. Very simply put, there is a Buena Park Zoning Ordinance requiring the nonconforming use to be terminated. This zoning ordinance cannot be ignored. (Long Beach City H.S. Dist. v. Stewart, supra, 30 Cal.2d at p. 766, 185 P.2d 585.) Caltrans cites no legal authority to the contrary.
Caltrans hints that had its appraiser valued the property as anything other than a mobile home park it would have done the Woodsons a disservice and failed to offer just compensation. This is because Caltrans's appraiser believed the property, if valued as vacant land, whether suitable for development as a self-storage facility or anything else, would have been worth no more than $885,000. However, had the appraiser so valued the property, in an amount less than one-half of the value the Woodsons' appraiser assigned, a separate set of issues would have arisen concerning the reasonableness of the likely resulting offer. This is because a "substantial difference between appraisals" casts doubt on accuracy (County of Los Angeles v. Kranz, supra, 65 Cal.App.3d at p. 660, 135 Cal. Rptr. 473), and accuracy in the manner in which the amount of the offer is determined bears upon the reasonableness of the offer (Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp., supra, 16 Cal.4th at p. 720, 66 Cal.Rptr.2d 630, 941 P.2d 809). At any rate, Caltrans cannot succeed in bootstrapping its offer into the realm of reasonableness by arguing that it could have offered even less.

D. Conclusion

Caltrans's appraisal, based on a nonconforming use required by a zoning ordinance to be terminated, was not made with care and accuracy. Its final offer was unreasonable under the good faith, care and accuracy analysis. Given this, and the great mathematical disparities, both absolute and proportional, between the offer and the award, no substantial evidence supports the trial court's determination that Caltrans's offer was reasonable. (See Redevelopment Agency v. Gilmore (1985) 38 Cal.3d 790, 808, 214 Cal.Rptr. 904, 700 P.2d 794 [articulating a substantial evidence standard with respect to the determination of the reasonableness of a Code of Civ. Proc., § 1250.410 offer].) Moreover, given the lack of evidence, the court abused its discretion in finding the offer was reasonable. (See Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp., supra, 16 Cal.4th at p. 722, 66 Cal.Rptr.2d 630, 941 P.2d 809 [applying an abuse of discretion standard without analysis].)
We need not consider Caltrans's miscellaneous attacks on the Woodsons' appraisal and other expert evidence. Suffice it to say, the trier of fact was at liberty to accept the evidence. (San Diego Metropolitan Transit Development Bd. v. Cushman, supra, 53 Cal.App.4th at p. 931, 62 Cal.Rptr.2d 121.) It is also unnecessary for us to address Caltrans's comments about the Woodsons' settlement tactics and the tenor of the Woodsons' briefs.

III

DISPOSITION
The order denying litigation expenses is reversed and remanded. The Woodsons shall recover their costs on appeal.
WE CONCUR: BEDSWORTH, ACTING P.J. and O'LEARY, J.
NOTES
[1] This figure was reduced from a higher figure exceeding $2 million, which included an amount of contributory value with respect to an adjacent strip of property used by, but not owned by, the Woodsons. Caltrans brought a successful motion in limine to exclude evidence of any contributory value.