[No. C061239. Third Dist. Oct. 29, 2010.]

TRACY JOINT UNIFIED SCHOOL DISTRICT, Plaintiff and Respondent,
v.
ERNEST J. POMBO, JR., et al., Defendants and Appellants.

**COUNSEL**

Miller Starr Regalia, George B. Speir, Thomas S. McConnell and Kathryn Rowe Jones for Defendants and Appellants.

Kronick, Moskovitz, Tiedemann & Girard and William T. Chisum for Plaintiff and Respondent.

**OPINION**

**BUTZ, J.**—Having decided to build a new high school, plaintiff Tracy Joint Unified School District (the District) filed this eminent domain action to acquire 61.6 acres in the middle of a 231-acre parcel of raw development land owned by defendant Ernest J. Pombo, Jr., and others.

The trial resulted in a battle of real estate appraisers. The District's expert valued the taking at about $3 million, with no severance damages. Defendants' expert fixed total compensation at around $12.4 million, including almost $3.1 million in severance damages.

The jury split the difference. It awarded defendants $7,085,150, plus severance damages of $900,000, for a total compensation award of $7,985,150. The verdict virtually matched defendants' pretrial settlement demand of $7,995,000, but was a far cry from the District's final offer of $3,181,500.

Defendants moved to recover their litigation expenses under Code of Civil Procedure section 1250.410,[1] contending that the District's offer was unreasonable and that their demand was reasonable. The trial court denied the motion, determining that the offer was reasonable under the circumstances.

On this appeal, we shall conclude that the District's stubborn adherence to a pretrial settlement offer that barely exceeded its own expert's appraisal was unreasonable as a matter of law. We shall reverse the order with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendants are the owners of a 231.26-acre parcel of undeveloped land (subject property) lying just to the east of the Tracy city limits.[2] The subject property consists of three contiguous parcels under a single ownership.

In May 2007, the District adopted a resolution of necessity authorizing the initiation of condemnation proceedings to acquire 61.6 acres in the middle of the subject property, for the purpose of constructing a high school.

On June 7, 2007 (the operative date of the taking), the District filed two complaints in eminent domain to acquire two tracts of land within the subject property for the high school project. The District deposited probable compensation totaling $3,080,000 with the State Treasurer. The figure was based on estimates from the District's appraiser, Jesse Smyers.

Before trial, the parties exchanged a list of valuation data prepared by their appraisers. Smyers's written appraisal valued the acquisition at $3,081,500, and did not include severance damages. Defendants' appraiser, Chris Carneghi, valued the taking at $12,406,000, which included $3,081,000 in severance damages.

Prior to trial, the parties exchanged their final offer and demand for settlement. The District offered to settle the case for $3,181,500. Defendants submitted a final demand of $7,995,000.

The case was tried to a jury, with the Honorable Elizabeth Humphreys presiding. Each party's appraiser, Carneghi on behalf of defendants and

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

[2] The fee owners of the property are members of the Pombo family. In 1998, Calvin Bright, Bright Development and Hensley Properties, L.P., acquired an option to purchase the property for possible future development. By assignment from the Pombos and Hensley Properties, L.P., Bright and Bright Development acquired the right to all condemnation damages associated with this action. For convenience, we refer to the Pombos and the Bright defendants collectively as "defendants."

Smyers on behalf of the District, testified in support of his valuation of the property and explained the basis for his opinion. The details of their testimony will be set forth as they become relevant.

The jury returned with a verdict that awarded defendants $7,985,150, consisting of $7,085,150 in compensation for the fair market value of the property and $900,000 in severance damages. Judgment was entered in conformance with the jury verdict. Neither party has appealed the judgment and it is now final.

Defendants then moved to recover their litigation expenses under section 1250.410, seeking approximately $574,000 in expert fees, attorney fees and "nonstatutory costs and expenses." Defendants contended that, based on the offer, demand and the evidence at trial, their final settlement demand was reasonable and the District's offer unreasonable.

Judge Humphreys denied the motion. She found that both experts "had significant problems in their evaluations"; that, given the rapidly changing real estate market in the area, "valuation of the subject property [was] particularly difficult"; and that, although the jury chose to give more credence to the testimony of Carneghi than Smyers, it would have been difficult to predict which expert would be more credible before the trial began. While acknowledging that defendants' demand was reasonable and that the percentage difference between the demand and the jury's award was extremely small, the judge found that "these factors are outweighed by the good faith, care and accuracy exhibited by [the District] in its overall evaluation of the value of the subject property." The court concluded that "[i]n light of the facts known prior to the expert witnesses' trial testimony, [the District's] offer was reasonable."

Defendants appeal from the order denying fees.

## DISCUSSION

### I. Applicable Principles of Law

An award of litigation expenses in an eminent domain action is governed by section 1250.410, which provides, in pertinent part: "(a) At least 20 days prior to the date of the trial on issues relating to compensation, the plaintiff shall file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff its final demand for compensation in the proceeding. The offer and the demand shall include all compensation required pursuant to this title, including compensation for loss of goodwill, if any, and shall state whether

interest and costs are included. These offers and demands shall be the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses. . . . [¶] (b) *If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses.* [¶] . . . [¶] (d) If timely made, the offers and demands as provided in subdivision (a) shall be considered by the court on the issue of determining an entitlement to litigation expenses." (Italics added.)

■ "Section 1250.410 is intended to protect the property owner from being forced unnecessarily to litigate the value of the property sought to be condemned. [Citation.] Under the statute, the court is to view the reasonableness of the offer and the demand in the light of the evidence presented and the compensation awarded." (*Escondido Union School Dist. v. Casa Sueños De Oro, Inc.* (2005) 129 Cal.App.4th 944, 985 [29 Cal.Rptr.3d 89] (*Escondido*).)

An assessment of reasonableness must be based on " 'all the evidence admitted, not just the numerical amounts of the offer, demand and award.' " (*Glendale Redevelopment Agency v. Parks* (1993) 18 Cal.App.4th 1409, 1416 [23 Cal.Rptr.2d 14] (*Parks*), quoting *County of San Diego v. Woodward* (1986) 186 Cal.App.3d 82, 90 [230 Cal.Rptr. 406].) The question of reasonableness is addressed in the first instance to the trial court. (*County of Los Angeles v. Kranz* (1977) 65 Cal.App.3d 656, 659 [135 Cal.Rptr. 473] (*Kranz*).) Thus, we will affirm the order if it is supported by substantial evidence, resolving factual conflicts and drawing all legitimate inferences in its favor. (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1217 [4 Cal.Rptr.3d 519] (*Moulton*).) However, if the uncontradicted facts permit only one reasonable conclusion, the issue is one of law, and the rule of deference does not apply. (*Kranz, supra,* at p. 659.)

## II. The Demand Was Reasonable

■ Section 1250.410 provides that if (1) the offer of the plaintiff was unreasonable and (2) the demand of the defendant was reasonable, in the light of the evidence admitted and the compensation awarded, it *shall* award the defendant its litigation expenses. (§ 1250.410, subd. (b).) Thus, if both of the above conditions are met, the court has no discretion—it must award the property owner its litigation expenses, including reasonable expert and attorney fees. (§ 1250.410, subd. (e).)

Here, defendants' settlement demand of $7,995,000 was approximately midway between the two experts' appraisals and came within 1 percent of duplicating the eventual jury award. Based on these two compelling facts, defendants' demand was manifestly reasonable, as the trial court expressly found. Only the reasonableness of plaintiff's offer is open to dispute.

### III. The Offer Was Not Reasonable

■ The question of whether a condemner's offer was a "reasonable" one has been litigated many times over the years. Appellate decisions have instructed the trial court to consider three factors in resolving this issue: (1) the amount of the difference between the offer and the compensation awarded, (2) the percentage of the difference between the offer and the award, and (3) the good faith, care and accuracy in how the amount of the offer and amount of the demand were determined. (*Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 720 [66 Cal.Rptr.2d 630, 941 P.2d 809] (*Continental Development*); *People ex rel. Dept. of Transportation v. Acosta* (2009) 178 Cal.App.4th 762, 773 [100 Cal.Rptr.3d 669]; *Parks, supra,* 18 Cal.App.4th at pp. 1415–1416.) In her written ruling, Judge Humphreys acknowledged that she was applying the three-part test. We therefore proceed to consideration of each of these factors.

#### A. Difference Between the Amount of the Offer and the Compensation Awarded

■ The gross dollar disparity between the District's offer of $3,181,500 and the jury's verdict of $7,985,150—more than $4.8 million—is striking and "certainly indicative of an unreasonable offer." (*People ex rel. Dept. of Transportation v. Woodson* (2001) 93 Cal.App.4th 954, 957 [113 Cal.Rptr.2d 559] (*Woodson*).) The difference looms especially large considering that the District offered only a token amount above the appraisal figure of its expert, Smyers.

#### B. Percentage Difference Between the Offer and the Compensation Awarded

The percentage of difference between the District's offer and the jury verdict also persuasively points to an unreasonable offer. A survey of cases on the subject discloses that final offers amounting to less than 60 percent of the jury verdict have generally been found to be unreasonable, while offers of 85 percent or more have been held reasonable. (*Woodson, supra,* 93 Cal.App.4th at p. 958; *People ex rel. Dept. of Transportation v. Yuki* (1995) 31 Cal.App.4th 1754, 1764 [37 Cal.Rptr.2d 616].) The offer here constituted only 39.8

percent of the compensation awarded. Viewed from another perspective, the jury's award was more than two and one-half times the size of the District's offer, while bearing a virtual one-to-one ratio to the property owners' demand. Once again, the reasonableness of the offer fares very poorly under this metric, and the District makes no principled argument to the contrary.

### C. *"Good Faith, Care and Accuracy"*

■ We therefore turn to the key factor relied upon by the trial court to deny defendants' motion—the "good faith, care and accuracy" in how the offer and the demand were determined. This assessment must be based not merely upon mathematical comparisons, but upon all the evidence admitted at trial. (*Parks, supra,* 18 Cal.App.4th at p. 1416; *Continental Development, supra,* 16 Cal.4th at p. 720.) Nevertheless, it cannot be denied that, from a purely mathematical standpoint, the numbers decisively favored an award of litigation expenses to the condemnee. Furthermore, as we shall explain, a review of California decisions discloses that in cases where relief was denied though numerical comparisons favored an award of expenses, the third factor pointed forcefully in the opposite direction.

For example, in *Moulton,* a water district offered only $10,000 as compensation for a nonexclusive pipeline easement, while the owner demanded $66,330. The jury came back with an award of $5,400 for the easement and $43,000 in severance damages. (*Moulton, supra,* 111 Cal.App.4th at pp. 1212–1213.) The trial judge denied the motion for litigation expenses. Independently examining the evidence, the judge found that the district reasonably took the position that no severance damages were warranted, and that there was a " 'real possibility' " the owner could have received an award of close to zero. (*Id.* at pp. 1217–1218.) Determining that these observations were supported by the trial record, the appellate court affirmed the order. (*Ibid.*)

In *Escondido,* a school district condemned the owner's land after two manufactured (prefabricated) homes had been partially constructed on it. (*Escondido, supra,* 129 Cal.App.4th at pp. 954–956.) The trial court was presented with an issue of first impression—whether the manufactured homes (which were capable of being moved to another location) were " 'improvements pertaining to the realty' and therefore compensable under eminent domain law. (§§ 1263.205, 1263.210.)" (*Escondido,* at pp. 957–958, 986.) The owner's pretrial demand totaled $370,000, while the district offered $200,000. (*Id.* at p. 957 & fn. 7.) The trial court, sitting without a jury, awarded the owner $494,850, but denied its motion for litigation expenses. (*Id.* at p. 958.)

The appellate court affirmed the order, inasmuch as (1) compensation for the manufactured homes constituted the bulk of the award, (2) the city took a reasonable and legitimate stance that the homes were not compensable, and (3) resolution of the dispute involved a complex and novel legal issue. (*Escondido, supra,* 129 Cal.App.4th at pp. 986–987.)

Finally, in *Continental Development,* a transportation district (MTA) condemned a narrow strip of land to build an elevated light-rail line. (*Continental Development, supra,* 16 Cal.4th at pp. 698–699.) The trial court ruled inadmissible evidence that putting a rail station in close proximity to structures on the subject property would actually *increase* the value of the land. The district's final offer was $200,000 and the owner's demand was $500,000. (*Id.* at p. 721.) The jury awarded $106,356 for the taking and about $1 million in severance damages, a substantial portion of which was for loss of value resulting from negative visual impact. Due to the court's ruling, the jury was not allowed to hear evidence that, if accepted, would have lowered that figure significantly. (*Id.* at pp. 700–701.)

The Court of Appeal in *Continental Development* determined that the district's offer was unreasonable, relying on the fact that its offer was only 18 percent of the severance damages award. (*Continental Development, supra,* 16 Cal.4th at p. 722.) The California Supreme Court reversed the Court of Appeal's decision. After overruling prior precedent and concluding that the jury was entitled to consider all nonspeculative "competent evidence relevant to any conditions caused by the project that affect the remainder property's fair market value" (*id.* at p. 718), the court went on, in an advisory ruling, to uphold the trial court's denial of litigation expenses. This result, however, was based primarily on the fact that the district's position on the evidentiary issue had now been vindicated: "Of course, since we have concluded all reasonably certain, nonspeculative benefits resulting from the project may be offset against severance damages, it can hardly be said, in retrospect, that the MTA acted unreasonably." (*Id.* at p. 722.) The court also noted that the owner's expert witness was " 'less than impressive' " and that the owner itself did not give much credence to its expert in formulating the offer. (*Ibid.*)

■ These cases illustrate that, where mathematical comparisons would ordinarily dictate an award to the owner, a trial court may properly deny litigation expenses where there is significant countervailing evidence that the condemner's offer was nonetheless made in good faith and with reasonable care.

This is not such a case. There was no tricky legal issue or unusual circumstance that made the offer difficult to formulate. The jury was confronted with a straightforward conflict between two appraisers who advocated

vastly different approaches to the appraisal process. The District's appraiser, Smyers, viewed the subject property as "essentially undeveloped land" with no reasonable prospect of development in the future. Consequently, the comparables he used for his appraisal were tracts of undeveloped, agricultural land in the region surrounding the subject property. Unsurprisingly, these comparables yielded an estimated value of only $50,000 per acre, with no severance damages.

On the other hand, defendants' appraiser, Carneghi, ascertained that the City of Tracy had revised its general plan in 2006 and that the area was now designated as a "secondary residential growth area." He also interviewed Tracy city planners, who informed him that it would now be reasonable to expect to begin development within five years. Thus, contrary to Smyers's testimony that the property was in a "low-density residential" area, the general plan amendment meant that the property was now viable for multiple-density unit development.[3]

Because the subject property was in an area designated for development in the not-too-distant future, Carneghi drew three of his five comparables from the Sacramento metropolitan region, where properties in similar stages of development existed. One parcel in Rancho Cordova, which Carneghi viewed as a "perfect" comparable because of similarities in planned development, had recently sold for $163,602 per acre. Another property in Elk Grove sold for $135,062 per acre. Although each of those properties were, unlike defendants', already within the city limits and further along in the development process than was the subject property, that factor was somewhat offset by the fact that the average sales price of a home in Tracy was higher than in Rancho Cordova or Elk Grove, due to its commuting proximity to the Bay Area.

Taking into account all of his comparables, Carneghi arrived at a figure of $151,000 per acre for the subject property, resulting in a total value of $9.325 million for the taking. In addition, Carneghi found that the construction of a high school in the middle of the owner's land would produce congestion, noise and parking problems, making the land less desirable for residential units. He therefore computed $3,081,000 in severance damages.

It is true, as Judge Humphreys pointed out, that there were significant problems with both appraisals. Carneghi may have overestimated the ease with which building permits could be obtained, and underestimated the

---

[3] Smyers admitted he was unaware of the general plan amendment when he did his appraisal and that the new plan shows higher target densities for the property than the old general plan. Still, he insisted that the plan amendment did not change his opinion of the value of the property.

impact of "Measure A," which limited residential growth within city limits, as well as the cloud of uncertainty posed by the facts that (1) the increase in property values and pace of development in Tracy had slowed, if not come to a complete halt, by 2007 and (2) annexation could not occur until LAFCO[4] had approved a "sphere of influence" for Tracy, a process that was still in its early stages.

But Smyers's mistakes were at least as conspicuous: (1) he miscalculated the size of the taking (using the figure of 58.6 acres rather than 61.6) by making a simple mathematical error; (2) he used the same per-acre value of the land in 2007 that he used in 2005, making no adjustment for the escalation in property values during this interval; (3) his appraisal was based on the incorrect land use density for the larger parcel (low-density residential rather than multiple-use density), a significant error attributable to the fact that he failed to discover that Tracy had amended its general plan in 2006;[5] (4) he admitted that, in light of his ignorance of the revised projected density development for the large parcel, his estimate that the subject property would produce only 2.1 to 5.8 residential units per acre could be seriously off base, and that the correct figure could be as high as 18.75 units per acre; (5) he was unaware that one of the comparables he used was a "distress" sale such that the property was never exposed to the market; (6) another comparable turned out to be an Internal Revenue Code section 1031 (26 U.S.C. § 1031) property exchange with a three-week escrow, facts that could have potentially distorted the property's true fair market value; and (7) four of Smyers's comparables were outside the secondary residential growth area designated by the general plan and thus not targeted for development for at least 20 years, in contrast to the subject property which, according to Tracy's assistant planning director, William Dean, could reasonably be expected to begin development within five to 10 years.

We need not pass judgment on whose expert was the more persuasive. The point is that *both experts* had serious problems with their appraisals and those weaknesses were apparent before the trial began. Yet despite this state of affairs, only one party—defendants—displayed any willingness to compromise.

By any measure, defendants' settlement proposal displayed a reasonable compromise position. Although their appraiser was prepared to testify that fair compensation exceeded $12 million, defendants submitted a final demand of just below $8 million.

---

[4] LAFCO is an acronym for "Local Agency Formation Commission." It is a statewide agency responsible for reviewing jurisdictional changes in city boundaries.

[5] On cross-examination, Smyers conceded that he did not even know what a secondary residential growth area was when he prepared his appraisal report, and that he was "confused" at his deposition about the difference between primary and secondary growth areas.

In contrast, the District's offer barely exceeded Smyers's estimate of $3,081,500. Its offer of $3,181,500 carried the implicit message that its own appraisal was the only valid one[6] and audaciously assumed that the jury would totally reject Carneghi's testimony. This type of conduct was not indicative of "good faith, care and accuracy."[7] On the contrary, it evinced an arrogant and unyielding approach to settlement negotiations.

The facts here are comparable to those in *City of Gardena v. Camp* (1977) 70 Cal.App.3d 252 [138 Cal.Rptr. 656] (*Camp*). There, the city's offer closely adhered to its appraiser's estimate of the taking, which did not include severance damages. The defendants' appraisal was significantly higher, but their demand showed they were willing to accept quite a bit less. The city's gamble did not succeed. The jury returned an award that coincided with the opinion of the defense expert. (*Id.* at p. 255.)

In reversing the trial court's denial of litigation expenses, the Court of Appeal observed, "[T]he City's offer amounted to less than 60 percent of the value of the property as determined by the jury. The offer was substantially lower in absolute terms ($21,756.50) than the award. The City was oblivious to the opinion of defendants' expert appraiser that significant severance damages would attend condemnation of the property. *Certainly the City was entitled to have confidence in its appraisal, but unyielding adherence thereto was incompatible with that spirit of compromise one would expect of a reasonable condemner. The City's offer of $2,250 more than its appraisal was a mere token.* Defendant's demand of $43,000 was considerably below the appraisal of their expert, and the $40,000 modified demand evidenced a willingness to further compromise on the question of value." (*Camp, supra*, 70 Cal.App.3d at p. 257, italics added.)

*Camp* cited with approval the decision in *Kranz*, where the county's final offer was not only significantly lower than the adjudicated value of the property, but only nominally above its own expert's appraisal. (*Camp, supra*, 70 Cal.App.3d at pp. 256–257, citing *Kranz, supra*, 65 Cal.App.3d at pp. 659–660.) Acknowledging that the question of reasonableness was addressed in the first instance to the trial court (*Kranz, supra*, at p. 659), *Kranz* nevertheless held that the offer was unreasonable as a matter of law. "[The] county's offer ignored landowners' expert's appraisal of $96,750. While

---

[6] In his declaration in opposition to the motion for litigation expenses, counsel for the District frankly admitted that the District *based its offer* on Smyers's appraisal.

[7] As counsel for defendants aptly pointed out at oral argument, Judge Humphreys applied the wrong standard in her pivotal finding that the District exhibited good faith, care and accuracy "in its *overall evaluation of the value of the subject property.*" (Italics added.) The proper subject of inquiry is the good faith, care and accuracy exhibited by plaintiff in *how the amount of its offer was determined.* (*Continental Development, supra*, 16 Cal.4th at p. 720.)

experts often differ, *the substantial difference between appraisals should have cast some doubt on the accuracy of [the] county's appraisal . . . ."* (*Id.* at p. 660, italics added.) *Kranz* ruled that the county should have realized "that a jury would give some weight to the opinion of each expert, and fix the fair market value of the property somewhere between the two." (*Ibid.*) It also found significant that while the owners came down "more than half way on their demand," the county "stubbornly stuck to its own appraisal plus a small amount which would barely cover landowners' added costs of preparing the cause for trial." (*Ibid.*)

■ This case calls for a similar result. A good faith settlement offer carries with it the implicit recognition that proceeding to trial always carries an element of risk. In a case such as this, which came down to a credibility contest between two respected experts, an *eight million dollar* difference between the two appraisals should have prompted a reasonable condemner to submit an offer that, at a minimum, took into account the cost of litigation as well as the risk that the jury will not accept its own expert's testimony as gospel. The District's take-it-or-leave-it offer did neither.

The District spends many pages of its opening brief criticizing Carneghi's valuation approach and recounting its own pretrial efforts to validate Smyers's appraisal. These arguments are unavailing.

■ Section 1250.410, subdivision (b) requires the court to determine the reasonableness of condemner's offer "in the light of the *evidence admitted* and the *compensation awarded* in the proceeding . . . ." (Italics added.) The statute lacks any mention of the condemner's conduct prior to trial. Hence, an inquiry into the District's pretrial preparation is not relevant to the question of reasonableness.

Moreover, the District's extolment of Smyers's appraisal technique rings hollow in light of the fact that the only neutral witness who testified at trial, Tracy's assistant planning director, William Dean, corroborated Carneghi's opinion that it was reasonable to expect development of the property within five years, thus seriously undermining Smyers's view that residential development was an event that could take place, if ever, only in the far distant future.[8]

The District also touts the fact that it secured the opinion of a second appraiser, Jeffrey Ridolfi. However, Ridolfi did not do his own appraisal.

---

[8] Judge Humphreys found Dean's testimony to be "equivocal regarding the property['s] development potential." We perceive no such equivocation. Despite acknowledging that there were obstacles that had to be surmounted before building permits could be issued, Dean steadfastly stood by his opinion that the subject property could begin the development process within five years.

Instead, he merely criticized some of the comparables used by Carneghi in formulating his opinion. As we have recognized, both experts' opinions had flaws. Consequently, Ridolfi's testimony does not advance the District's cause.

The two cases primarily relied on by the District, *State of California ex rel. State Pub. Works Bd. v. Turner* (1979) 90 Cal.App.3d 33 [153 Cal.Rptr. 156] (*Turner*) and *City of San Leandro v. Highsmith* (1981) 123 Cal.App.3d 146 [176 Cal.Rptr. 412] (*Highsmith*) are clearly distinguishable.

In *Turner*, the appellate court affirmed a denial of litigation expenses even though the award came close to the owner's demand, where the owner did not retain his own expert and thus "offered no expert assistance to counter the state's appraisal." (*Turner, supra,* 90 Cal.App.3d at p. 38.) In addition, the state entertained a well-founded belief that the owner was not entitled to $100,000 in *Klopping*[9] damages. (*Turner,* at pp. 36–38.) Such unusual circumstances were not present here.

*Highsmith* is even less relevant to our inquiry. There, the owners submitted a settlement demand less than 30 days prior to the scheduled trial date but more than 30 days prior to the actual trial date. The appellate court held that the scheduled trial date was controlling and therefore the demand was untimely. On this basis alone, the court upheld the denial of litigation expenses. (*Highsmith, supra,* 123 Cal.App.3d at pp. 153–155.) In dicta, the court also found evidentiary support for an implied finding by the trial court that the owners' demand was *unreasonable.* By contrast, the trial court here found defendants' offer to be reasonable.

In sum, the trial court's implied finding that the "good faith, care and accuracy" factor strongly favored the District's offer is irreconcilable with the evidence at trial. Moreover, because the mathematical factors overwhelmingly favored defendants, the District's parsimonious offer simply cannot be deemed a reasonable one.

We are cognizant that the denial of litigation expenses must be affirmed if supported by substantial evidence. However, "as with any finding by a trial court, 'if the uncontradicted evidence permits only one conclusion, the issue is legal, not factual.'" (*County of Contra Costa v. Pinole Point Properties, Inc.* (1994) 27 Cal.App.4th 1105, 1115 [33 Cal.Rptr.2d 38].)

■ Here, the monetary difference between the offer and the award was enormous, the property owners' offer was extremely reasonable and the

---

[9] *Klopping v. City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345] held that a property owner is entitled to damages by virtue of the condemner's unreasonable precondemnation conduct that proximately causes the owner economic harm.

District made no effort to show good faith by tendering an offer that gave serious consideration to an adverse appraisal that was several times larger than that of its expert. "It is the duty of the attorney responsible for the case to consider all aspects of the litigation which may possibly affect the result. In addition to the information furnished by an expert, the good faith, care and accuracy of an offer requires the intellectual and thoughtful analysis by counsel. He does not fulfill that function when he is merely a conduit for the expert's conclusion." (*Turner, supra*, 90 Cal.App.3d at p. 40 (dis. opn. of Wiener, J.).)

The order denying defendants their litigation expenses was plainly inconsistent with the legislative intent behind section 1250.410, which is to protect the property owner from being unnecessarily forced to litigate the value of the property to be condemned. (*People ex rel. Dept. of Water Resources v. Andresen* (1987) 193 Cal.App.3d 1144, 1166 [238 Cal.Rptr. 826]; *Redevelopment Agency v. First Christian Church* (1983) 140 Cal.App.3d 690, 706 [189 Cal.Rptr. 749].) The trial court erred in refusing to grant the motion.

## DISPOSITION

The order is reversed. The matter is remanded to the trial court to grant the motion and award defendants their reasonable litigation expenses pursuant to section 1250.410. Defendants shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (3).)

Raye, Acting P. J., and Robie, J., concurred.