Opinion
 

 HALLER, J.
 

 In this eminent domain action, San Diego Metropolitan Transit Development Board (SMTDB) acquired a portion of a commercial parcel owned by Stephen P. Cushman, Stephen P. Cushman, Trustee, and
 
 *923
 
 Lawrence M. Cushman (collectively Cushman) for construction and operation of the Santee Light Rail Trolley Extension. At trial, the sole issue was the amount of severance damages, if any, owed to Cushman; the parties had settled the other components of just compensation as well as all other issues before trial. The jury awarded $322,217 in severance damages. SMTDB appeals from the judgment, contending Cushman’s expert presented improper valuation evidence. Cushman cross-appeals, contending the trial court erred in denying its motion for litigation expenses.
 

 Factual and Procedural Background
 

 Cushman owned a five-acre parcel, which was improved with a thirty-three thousand and two-hundred square-foot structure. The parcel is located on the northeast comer of the intersection of Marshall Avenue and Fletcher Parkway in El Cajon.
 

 The Cushman property is zoned commercial, which requires one parking space for every one hundred square feet of restaurant space and one parking space for every three hundred square feet of retail space.
 

 On April 13, 1993, SMTDB filed its complaint in eminent domain to acquire a fee taking of 6,425 square feet and a temporary constmction easement of 3,005 square feet. SMTDB also deposited with the county treasurer $91,770 as “just compensation” for the taking prayed for in the complaint.
 

 On June 10, 1994, the parties exchanged statements of valuation data. With respect to severance damages, Cushman valued the severance damages at $415,000, while SMTDB valued the permanent severance damages at $0.
 

 On August 26, 1994, Cushman made a final demand for compensation of $355,000 and SMTDB made a final offer of compensation of $154,000.
 

 At the date of valuation, Cushman leased the existing retail building to Levitz Furniture through the year 2009, with a five-year option. Before the condemnation, Cushman had submitted an application for a conditional use permit to the City of El Cajon to construct a 9,100-square-foot restaurant on the parcel.
 

 Subsequently, the city issued the conditional use permit for the restaurant, which was constructed prior to the trial. Because of a grandfather provision for the retail building, the conditional use permit required a total of 173 parking spaces—82 to service the retail building and 91 to service the restaurant building. Otherwise, the zoning ordinance would have required
 
 *924
 
 202 parking spaces. As of the date of valuation, there were 228 parking spaces on the Cushman parcel or 26 more spaces than required for the retail building and the restaurant.
 

 Under the zoning ordinance, the 26 extra parking spaces would have allowed Cushman to expand the retail building by 7,800 square feet (26 x 300 - 7,800).
 

 Cushman’s experts testified that the highest and best use of the property was to develop the commercial retail space to its maximum capacity, which would mean the retail building would be expanded from 33,200 square feet to 41,000 square feet (33,200 + 7,800 = 41,000).
 

 Cushman’s experts opined that expansion capacity affects valuation because larger projects will appeal to more retailers, thereby giving owners greater flexibility in leasing the space.
 

 According to Cushman’s experts, the taking would eliminate 13 parking spaces under the zoning ordinance. The effect of this reduction in the number of parking spaces would be to cut in half the potential expansion of the retail building to 3,900 square feet (13 x 300 = 3,900). In other words, based on available parking requirements, before the taking the retail building could be expanded by 7,800 square feet while after the taking the expansion figure would be only 3,900 square feet.
 

 Howard Berkson, Cushman’s appraiser, opined a 7,800-square-foot addition was physically possible, legally permissible and financially feasible. Berkson, who determined the fair market value of the property before the taking using the comparable sales approach and the income approach, opined the income approach provided the better indication of value.
 

 Under the income approach, Berkson determined the fair market value of the property at $6,929,000 in the before condition with full expansion capacity and at $6,509,500 in the after condition with one-half expansion capacity. The difference between the two numbers was computed to $419,500—Berkson’s severance damages using the income approach.
 

 Under the income approach, Berkson determined the fair market value of the property at $6,929,000 in the before condition with full expansion capacity and at $6,509,500 in the after condition with one-half expansion capacity. The difference between the two numbers was computed at $419,500—Berkson’s severance damages using the income approach.
 

 
 *925
 
 SMTDB’s appraiser valued the severance damages at zero.
 

 The jury awarded Cushman $322,217 as severance damages. Judgment was entered in favor of Cushman in the amount of $415,797: $93,580 for settlement of all just compensation claims other than permanent severance damages and $322,217 for severance damages.
 

 The trial court denied Cushman’s motion for litigation expenses.
 

 Discussion
 

 I.
 
 SMTDB’s Appeal
 

 SMTDB contends Berkson’s valuations of severance damages were admitted in error because they were based on a speculative future use and improperly used a specific plan of development to project future income. SMTDB also attacks Berkson’s income-approach valuation as improperly utilizing capitalization of hypothetical income from a nonexisting improvement; SMTDB claims his approach was derived from the unfavored developer’s approach methodology.
 

 Legal Overview
 

 An owner is entitled to just compensation for property taken for public use. (Cal. Const., art. I, § 19; U.S. Const., 5th Amend.; Code Civ. Proc.,
 
 [1]
 
 § 1263.010.) “ ‘The principle sought to be achieved by this concept [of just compensation] “is to reimburse the owner for the property interest taken and to place the owner in as good a position pecuniarily as if the property had not been taken.” ’ ”
 
 (People
 
 ex rel.
 
 Dept, of Water Resources
 
 v.
 
 Andresen
 
 (1987) 193 Cal.App.3d 1144, 1163 [238 Cal.Rptr. 826].)
 

 The measure of just compensation is the fair market value of the property (§ 1263.310), defined as “the highest price on the date of valuation that would be agreed to by a seller, being willing to sell but under no particular or urgent necessity for so doing, nor obliged to sell, and a buyer, being ready, willing, and able to buy but under no particular necessity for so doing, each dealing with the other
 
 with full knowledge of all the uses and purposes for which the property is reasonably adaptable and available.”
 
 (§ 1263.320, subd. (a), italics added.)
 

 Fair market value is the highest and best use for which the property is geographically and economically adaptable.
 
 (City of Los Angeles
 
 v.
 
 Decker
 
 (1977) 18 Cal.3d 860, 867 [135 Cal.Rptr. 647, 558 P.2d 545].)
 

 
 *926
 
 Once the highest and best use of the property is determined, one of several approaches to valuation must be selected. Evidence Code sections 815-820 set forth various methodologies sanctioned for use by valuation experts, including considering sales contracts of comparable properties (Evid. Code, § 816) and capitalizing income from the subject land and its existing improvements (Evid. Code, § 819).
 

 Where there is only a partial taking, compensation must be given for damage, if any, to the remaining property in addition to compensation for the taking. (Cal. Const., art. I, § 19 [“Private property may be taken or
 
 damaged
 
 for public use only when just compensation . . . has first been paid . . . .” (italics added)]; U.S. Const., 5th Amend.; § 1263.410, subd. (a).) Such severance damages are compensation for injury to the remainder in a partial taking. (§ 1263.410, subd. (a).)
 
 [2]
 

 Severance damages, which are measured by the damage to the remainder reduced by any benefit to the remainder (§ 1263.410, subd. (b)), represent the diminution in the market value of the remaining portion of property.
 
 (Colusa & Hamilton R.R. Co.
 
 v.
 
 Leonard
 
 (1917) 176 Cal. 109, 112 [167 P. 878].) Severance damages consist of the difference in value of the remaining part before and after the taking.
 
 (City of San Diego
 
 v.
 
 Neumann
 
 (1993) 6 Cal.4th 738, 745 [25 Cal.Rptr.2d 480, 863 P.2d 725];
 
 San Diego Gas & Electric Co.
 
 v.
 
 Daley
 
 (1988) 205 Cal.App.3d 1334, 1345 [253 Cal.Rptr. 144].) In other words, “The value of the remaining property taken as a part of the whole, described as the ‘before condition,’ must be compared with the value that portion has as a result of the take and the construction of the improvement in the manner proposed, described as the ‘after condition.’ Damages are computed simply by subtracting the market value of the remainder in its after condition from the market value of the remainder in its before condition.” (1 Condemnation Practice in Cal. (Cont.Ed.Bar 1995) Severance Damages, § 5.9, p. 198.)
 

 Were the Severance Damages Improperly Based on Speculation?
 

 Relying on venerable case law that denounces speculative damages (see, e.g.,
 
 Oakland
 
 v.
 
 Pacific Coast Lumber etc. Co.
 
 (1915) 171 Cal. 392, 400 [153 P. 705];
 
 Sacramento etc. R.R. Co.
 
 v.
 
 Heilbron
 
 (1909) 156 Cal. 408, 410-412 [104 P. 979]), SMTDB contends Berkson’s valuation, based on a
 
 *927
 
 proposed expansion of the retail building, should have been excluded because it was too speculative, remote and conjectural.
 

 We disagree.
 

 In order to recover severance damages, there must be some actual decrease in the market value of the remainder. One court has described the measurement of severance damages: “Severance damages must be based upon real physical disturbance of a property right and a decrease in market value of the property rather than upon remote possibilities which are highly speculative and conjectural. [Citations.] It has frequently been held that loss of business, profits, goodwill or future income is not compensable. [Citations.] Nonetheless, the reduction in probable income from the operation of the lemon grove as a result of the taking would be considered by a prospective purchaser in determining the fair market value and the price he would be willing to pay, and it therefore constitutes an acceptable reason for the opinion of severance damage asserted by defendant’s appraiser.”
 
 (Ventura County Flood Control Dist.
 
 v.
 
 Security First Nat. Bank
 
 (1971) 15 Cal.App.3d 996, 1002 [93 Cal.Rptr. 653].)
 
 [3]
 

 Notwithstanding the long-standing antipathy for speculative damages as an improper element of severance damages (see historical review in
 
 City of San Diego
 
 v.
 
 Neumann, supra,
 
 6 Cal.4th at pp. 747-749), courts have acknowledged the present value of property may reflect its development potential. (See
 
 People
 
 v.
 
 Ocean Shore Railroad
 
 (1948) 32 Cal.2d 406, 425-426 [196 P.2d 570, 6 A.L.R.2d 1179];
 
 City of San Diego
 
 v.
 
 Neumann, supra,
 
 6 Cal.4th at p. 756.)
 

 In its most recent pronouncement in the area, the California Supreme Court noted the realities of the marketplace dictate a recognition that “future use may affect the present value of real property.”
 
 (City of San Diego
 
 v.
 
 Neumann, supra,
 
 6 Cal.4th at p. 756.) “When the government impairs that integrated use by taking some of the property, the property remaining declines in value, and the owner, under the constitutional guarantee of just compensation, should be compensated for that injury. The diminution in value for which compensation is compelled is not speculative, but rather actual: Before the taking, the development potential of the separate parcels considered as a whole added to their collective present value; the taking of part diminishes the present value of what remains.”
 
 (Ibid.)
 

 
 *928
 
 In
 
 City of San Diego
 
 v. Neumann, supra, 6 Cal.4th 738, defendants owned four contiguous parcels: a trailer park located on two parcels, and various unrelated businesses located on the other parcels. The city condemned the latter two parcels to broaden a boulevard, and defendants sought severance damages, claiming that the four parcels together were suitable for commercial development as a shopping center, that the two condemned parcels provided a means of direct access from the boulevard to the remaining parcels, and that loss of the access lots through condemnation therefore damaged the value of the remaining parcels. The Supreme Court held “. . . if the landowner establishes that there is a reasonable probability his contiguous commonly owned lots are or will be available for development or use as an integrated economic unit in reasonably foreseeable future, all of the separate lots may be considered as a larger parcel for purposes of awarding severance damages.”
 
 (Id.
 
 at p. 756.)
 

 Applying
 
 City of San Diego
 
 v. Neumann, supra, 6 Cal.4th 738, we find Cushman properly was allowed to seek severance damages for his inability to fully expand the existing retail building on the remainder because of the number of parking spaces lost as a result of the taking. Expansion of the retail building was “reasonably probable and reasonably achievable”
 
 (id.
 
 at p. 756); the loss of that potential could be shown to affect the property’s present fair market value.
 

 SMTDB argues the 7,800-square foot expansion of the building was premised on a number of contingencies, none of which was reasonably probable: procurement of a conditional use permit for the expansion, obtaining consent of tenant to the expansion, and securing permission to construct the expansion over an existing San Diego Gas & Electric Co. easement.
 

 These contingencies go to the weight of the evidence, not its admissibility. Moreover, we disagree with SMTDB’s characterization of the contingencies as not reasonably probable. There was no showing that procurement of a conditional use permit was in any manner improbable; rather the evidence showed Cushman had successfully sought conditional use permits in the past for the property. Moreover, Cushman presented evidence as to the legal requirements for obtaining a conditional use permit for a 7,800-square-foot expansion, from which the jury could reasonably infer that it was not an insurmountable task. The trial court found the end of Levitz’s lease was in the reasonably foreseeable future, and there was evidence that Levitz was currently trying to find a replacement tenant. As to the San Diego Gas & Electric Co. easement, an expansion of 7,800 square feet did not necessarily involve the easement; there also was testimony that San Diego Gas & Electric Co. likely would approve construction over the easement.
 

 
 *929
 
 In sum, expansion of the retail building by 7,800 square feet was not unduly speculative. Cushman established that the highest and best use of the property was maximum expansion of the commercial retail space. Such an expansion was legally, physically and financially feasible. Berkson’s calculation of severance damages by subtracting the fair market value of the remainder in the after condition (limited expansion) from the fair market value of the remainder in the before condition (full expansion) was proper. (See
 
 City of San Diego
 
 v.
 
 Neumann, supra,
 
 6 Cal.4th at p. 745;
 
 San Diego Gas & Electric Co.
 
 v.
 
 Daley, supra,
 
 205 Cal.App.3d at p. 1345.)
 

 Were Severance Damages Improperly Based on Specific Plan of Development?
 

 SMTDB contends it was error to allow Cushman to use a specific plan of development in presenting evidence on severance damages. The contention is without merit because Cushman did not present a specific plan.
 

 While it is true that frustration of a specific plan of development cannot be a measure of damages (see
 
 People
 
 ex rel.
 
 Dept. Pub. Wks.
 
 v.
 
 Princess Park Estates, Inc.
 
 (1969) 270 Cal.App.2d 876, 884 [76 Cal.Rptr. 120]), Cushman did not present evidence of a specific plan. Rather, Cushman presented three diagrams showing where the additional seven thousand eight hundred square feet could be added to the existing retail building. (Cf.
 
 People
 
 ex rel.
 
 State Park Com.
 
 v.
 
 Johnson
 
 (1962) 203 Cal.App.2d 712, 715-716 [22 Cal.Rptr. 149].) No evidence of a specific plan of development was introduced. It was uncontradicted that the highest and best use of the property was to expand it to its maximum commercial capacity for general retail use. Cushman simply presented evidence of the highest and best use of the property, not a specific plan of development.
 

 Were Severance Damages Improperly Based on Capitalization of Income?
 

 SMTDB contends the trial court improperly allowed Berkson to present evidence on fair market value based on capitalization of income derived from a nonexisting improvement, which is proscribed by Evidence Code section 819.
 
 [4]
 

 
 *930
 
 We agree that Berkson’s income approach was not a proper methodology to employ in this case because it used a rental income stream from a
 
 nonexisting
 
 improvement.
 

 Evidence Code section 819 provides: “When relevant to the determination of the value of property, a witness may take into account as a basis for his opinion the capitalized value of the reasonable net rental value attributable to the land and existing improvements thereon (as distinguished from the capitalized value of the income or profits attributable to the business conducted thereon).”
 

 Berkson’s income approach, which was based upon the square-foot value of nonexistent improvements, did not comply with Evidence Code section 819.
 
 [5]
 
 The statute does not sanction capitalization of the reasonable rental value attributable to planned or future improvements
 
 not
 
 in existence as of the date of value. As such, Berkson’s income approach was not an authorized methodology for valuing severance damages here and should not have been admitted. Berkson’s income approach was too remote and uncertain to determine market value here.
 

 Was a Proper Methodology Presented to Support a Severance Damages Award?
 

 Berkson also presented a severance damages figure using fair market values of the remainder in the before and after conditions determined under the comparable sales methodology. This valuation data is not subject to
 
 *931
 
 criticism under Evidence Code section 819 and is sanctioned under Evidence Code section 816. SMTDB has not presented any convincing argument that Berkson’s valuation of severance damages using the comparable sales approach was improper.
 

 The jury’s verdict on severance damages—$322,217—is between SMTDB’s zero figure and Berkson’s $370,500 comparable sales figure. The jury had the power to give whatever weight it chose to the evidence in making its final determination. “The trier of fact may accept the evidence of any one expert or choose a figure between them based on all of the evidence.”
 
 (Liberty Mut. Ins. Co.
 
 v.
 
 Industrial Acc. Com.
 
 (1948) 33 Cal.2d 89, 94 [199 P.2d 302].) There is insufficient evidence to support a verdict “only when ‘no reasonable interpretation of the record’ supports the figure . . . .”
 
 (People
 
 v.
 
 Southern Pacific Co.
 
 (1983) 139 Cal.App.3d 627, 636 [188 Cal.Rptr. 913], quoting
 
 Benson Elec. Co.
 
 v.
 
 Hale Bros. Assoc., Inc.
 
 (1966) 246 Cal.App.2d 686 [55 Cal.Rptr. 73].) This is not such a case.
 

 II.
 
 Cushman’s Cross-appeal
 

 The total amount of compensation awarded to Cushman was $415,797. Cushman’s final demand of $355,000 was considerably closer to that figure than SMTDB’s final offer of $154,000. Cushman contends the trial court erred in not awarding it litigation expenses pursuant to section 1250.410. We disagree.
 

 Section 1250.410 reads in pertinent part: “(a) At least 30 days prior to the date of the trial on issues relating to compensation, the plaintiff shall file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff its final demand for compensation in the proceeding. Such offers and demands shall be the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses. . . .
 

 “(b) If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant’s litigation expenses.
 

 “In determining the amount of such litigation expenses, the court shall consider the offer required to be made by the plaintiff pursuant to Section 7267.2 of the Government Code and any other written offers and demands filed and served prior to or during the trial.
 

 
 *932
 
 “(c) If timely made, the offers and demands as provided in subdivision (a) shall be considered by the court on the issue of determining an entitlement to litigation expenses.”
 

 The purpose of section 1250.410 is to promote settlement of valuation disputes in eminent domain proceedings and guarantee full compensation to the landowner in case of unnecessary litigation.
 
 (County of Los Angeles
 
 v.
 
 Kranz
 
 (1977) 65 Cal.App.3d 656, 660 [135 Cal.Rptr. 473].)
 

 “Section 1250.410 requires the court to evaluate the reasonableness of the plaintiff’s offer in light of the award and the evidence adduced at trial. The trial court’s determination of that issue is a resolution of a question of fact and will not be disturbed on appeal if supported by substantial evidence.”
 
 (Redevelopment Agency
 
 v.
 
 Gilmore
 
 (1985) 38 Cal.3d 790, 808 [214 Cal.Rptr. 904, 700 P.2d 794].) “The common thread that runs through the case law ... is the deference the reviewing court pays to the trial court’s decision.”
 
 (Glendale Redevelopment Agency
 
 v.
 
 Parks
 
 (1993) 18 Cal.App.4th 1409, 1416 [23 Cal.Rptr.2d 14].)
 

 Courts have recognized the following as “[g]eneral guidelines” to determine when an offer is reasonable or unreasonable: “ ‘(1) the amount of the difference between the offer and the compensation awarded, (2) the percentage of the difference between the offer and the award . . . and (3) the good faith, care and accuracy in how the amount of the offer and the amount of the demand, respectively, were determined.’ ”
 
 (State of California
 
 ex rel.
 
 State Pub. Works Bd.
 
 v.
 
 Turner
 
 (1979) 90 Cal.App.3d 33, 37 [153 Cal.Rptr. 156].)
 

 In denying Cushman’s motion for litigation expenses, the trial court observed: “On[c]e again, I believe that the court’s rulings were correct, and that’s why I denied the motion for a new trial. On the other hand, we had an extension of existing law in this case. We had a case where there was no case directly on point, as [SMTDB’s counsel] says. It’s not a case where you value the property differently. That’s not this case at all. [¶ Under the circumstances, I’m not prepared to find that [SMTDB] acted unreasonably in their offer. The motion for litigation fees is denied.”
 

 We acknowledge that based strictly on the numbers, SMTDB’s final offer was significantly disproportionate to the ultimate award. The final offer of $154,000 was $261,797 less than the award or only about 37 percent of the
 
 *933
 
 award. Cushman’s final demand of $355,000, on the other hand, was only $60,797 less than the award; the final demand was approximately 85 percent of the award.
 

 Nonetheless, as this court pointed out in
 
 County of San Diego
 
 v.
 
 Woodward
 
 (1986) 186 Cal.App.3d 82, 89-90 [230 Cal.Rptr. 406]:
 

 “Section 1250.410 requires the trial judge to do more than just compare numbers. The 1975 statutory amendment enacting section 1250.410 directs the trial judge in determining whether to award litigation expenses to consider all the evidence admitted, not just the numerical amounts of the offer, demand and award. The statute calls on the trial judge to make a discretionary determination of reasonableness after weighing all the evidence and assessing witness credibility independently of the jury.
 

 “ ‘[T]he mathematical relation between the plaintiff’s highest offer and the award is but one factor to be considered by the trial court under the new statute. . . .’ ” (Quoting
 
 Redevelopment Agency
 
 v.
 
 Gilmore, supra,
 
 38 Cal.3d at p. 808; accord,
 
 Glendale Redevelopment Agency
 
 v.
 
 Parks, supra,
 
 18 Cal.App.4th at p. 1416.)
 

 Here the parties settled most of the lawsuit before trial. The only issue tried was the amount of severance damages. This factor in itself shows the parties acted in good faith in attempting to settle the lawsuit. Moreover, the parties differed not in their numerical valuations but on the purely legal issue of whether any severance damages was owed. Because the dispute was a legal one, the trial court was justified in giving greater importance to the good faith factor.
 

 As explained in SMTDB’s correspondence to Cushman, it believed that Berkson’s main appraisal methodology was “contrary to law.” Thus, SMTDB was not merely quibbling over dollars in refusing to compromise, but sticking fast to its legal theory, which we have endorsed in part in part I,
 
 ante.
 
 While Berkson’s valuation using the comparable sales methodology was properly admitted, Berkson’s income approach was an improper methodology in this case. We cannot suggest a condemning agency compromise its legal position just to avoid litigation. “If that was desirable, there would be no reason for the third item of consideration for ‘reasonableness,’ namely,
 
 good faith
 
 . . . .”
 
 (State of California
 
 ex rel.
 
 State Pub. Works Bd.
 
 v.
 
 Turner, supra,
 
 90 Cal.App.3d at p. 38; but see
 
 City of Gardena
 
 v.
 
 Camp
 
 (1977) 70 Cal.App.3d 252, 257 [138 Cal.Rptr. 656] [unreasonable not to negotiate even when appraiser said there were no severance damages].)
 

 
 *934
 
 Given the evolving developments of the law in this area (see maj. and dis. opns. in
 
 City of San Diego
 
 v.
 
 Neumann, supra,
 
 6 Cal.4th 738), we conclude there was substantial evidence to support the trial court’s finding that SMTDB acted in good faith and was not unreasonable in making its final offer. We cannot say the trial court erred in denying litigation expenses to Cushman.
 

 Disposition
 

 Affirmed.
 

 Kremer, P. J., and Nares, J., concurred.
 

 A petition for a rehearing was denied April 15, 1997, and the petition of appellant San Diego Metropolitan Transit Development Board for review by the Supreme Court was denied June 18, 1997.
 

 [1]
 

 All statutory references are to the Code of Civil Procedure unless otherwise specified.
 

 [2]
 

 Not every diminution in value that flows from a partial taking results in severance damages. “Merely rendering private property less desirable for certain purposes, or even causing personal annoyance or discomfort in its use, will not constitute the damage contemplated by the [Constitution.”
 
 (Eachus
 
 v.
 
 Los Angeles etc. Ry. Co.
 
 (1894) 103 Cal. 614, 617 [37 P. 750].)
 

 [3]
 

 Ventura County Flood Control Dist.
 
 v.
 
 Security First Nat. Bank
 
 was decided before the effective date of section 1263.510, which allows recovery for loss of goodwill. (Stats. 1975, ch. 1275, § 2, p. 3453, eff. July 1, 1976.)
 

 [4]
 

 In addition to attacking Berkson’s income approach on the basis of Evidence Code section 819, SMTDB also argues the approach was derived from the unfavored developer’s approach or subdivision analysis, which the courts have held is an improper valuation methodology for
 
 *930
 
 undeveloped or raw land. (See
 
 Contra Costa Water Dist.
 
 v.
 
 Bar-C Properties
 
 (1992) 5 Cal.App.4th 652, 657-660 [7 Cal.Rptr.2d 91].) This case, of course, does not involve raw land. Furthermore, inasmuch as we conclude Berkson’s income approach was fatally flawed, we need not further address SMTDB’s argument about improper use of the developer’s approach.
 

 [5]
 

 Notwithstanding the “value attributable to the land and
 
 existing
 
 improvements thereon” language of Evidence Code section 819, Cushman argues that Berkson’s income approach was authorized under the statute because it is a codification of the rule pronounced in
 
 People
 
 v.
 
 Dunn
 
 (1956) 46 Cal.2d 639 [297 P.2d 964]. (Evid. Code § 819, italics added.) Cushman is mistaken. The
 
 Dunn
 
 rule is: “[E]vidence of profits derived from a business conducted on the land is too speculative, uncertain and remote to be considered as a basis for ascertaining market value. ... On the other hand, . . . income from property in the way of rents is a proper element to be considered in arriving at the measure of compensation to be paid for the taking of property.” (46 Cal.2d at p. 641.) Evidence Code section 819 does indeed codify the
 
 Dunn
 
 rule, as expressed above. (See
 
 South Bay Irr. Dist.
 
 v.
 
 California-American Water Co.
 
 (1976) 61 Cal.App.3d 944, 979 [133 Cal.Rptr. 166].) However, neither the
 
 Dunn
 
 rule nor anything in that case would allow valuation based upon nonexistent improvements.