[No. C059064. Third Dist. Oct. 26, 2009.]

THE PEOPLE ex rel. DEPARTMENT OF TRANSPORTATION, Plaintiff and Appellant, v.
MERCEDES ACOSTA et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

## COUNSEL

Ronald W. Beals, Thomas C. Fellenz, Joann Georgallis and Harjinder K. Chima for Plaintiff and Appellant.

Greenan, Peffer, Sallander & Lally, Kevin D. Lally, John P. Makin, Alice M. Peiler; Heiser Law Corporation and Jeffrey D. Heiser for Defendants and Appellants.

## OPINION

**HULL, J.**—In this eminent domain proceeding, defendants Mercedes Acosta and Hammer 99, Inc. (hereafter collectively Acosta), the operator of a gas station and minimart on a portion of the condemned property whose franchise was terminated as a result of the condemnation, sought an award of damages for lost goodwill pursuant to Code of Civil Procedure section 1263.510. (Unspecified section references that follow are to the Code of Civil Procedure.) Plaintiff Department of Transportation (Caltrans), the condemner, asserted section 1263.510 is preempted by the Petroleum Marketing Practices Act (PMPA) (15 U.S.C. § 2801 et seq.), which limits a franchisee's recovery of goodwill to an allocation of any goodwill recovered by the franchisor.

After the trial court denied Caltrans's motion for summary adjudication on the goodwill claim and its motion in limine to exclude evidence of goodwill damages, the parties entered into a stipulation for entry of judgment in the amount of $704,500. The court thereafter entered judgment accordingly and awarded Acosta litigation expenses pursuant to section 1250.410.

Caltrans appeals both the judgment and the order awarding litigation expenses. Acosta has filed a protective cross-appeal regarding certain interlocutory orders of the trial court.

We conclude Acosta's claim for goodwill damages is not preempted by the PMPA and affirm the judgment. We further conclude the order awarding litigation expenses is supported by substantial evidence.

## FACTS AND PROCEEDINGS

On July 22, 2003, Caltrans filed a complaint in eminent domain to condemn property for the expansion of a highway interchange. Named as a defendant was Scannavino Properties I (Scannavino), the owner of the property. The complaint was later amended to add BP West Coast Products LLC (BP) and Acosta as defendants. BP leased the subject premises from Scannavino, and Acosta subleased the premises from BP. Acosta also maintained a franchise relationship with BP to operate a gas station and minimart on the premises.

On February 3, 2004, Acosta filed an answer to the complaint. On February 12, BP served upon Acosta a notice of termination of the franchise and sublease. In the notice, BP informed Acosta that, in the event it received goodwill damages in the condemnation proceeding, it would apportion those damages between itself and Acosta. Acosta thereafter amended its answer to include a claim for lost goodwill.

Caltrans filed a demurrer and motion to strike Acosta's answer, asserting the goodwill claim is preempted by the PMPA. The trial court, with Judge Saiers presiding, sustained the demurrer without leave to amend. Acosta filed a motion for reconsideration and requested leave to amend. The trial court granted the motion and modified its order to allow leave to amend.

Acosta filed a second amended answer in which it asserted a right to goodwill damages under both section 1263.510 and the PMPA.

Caltrans again filed a demurrer and motion to strike based on federal preemption, and Judge Saiers again sustained the demurrer without leave to amend.

Caltrans and BP entered into a stipulation for entry of judgment whereby Caltrans agreed to pay BP $575,000 plus $100,000 for the removal of certain underground equipment. The trial court entered judgment accordingly. Caltrans also paid Scannavino $550,000 on its claims in the proceeding.

On September 27, 2005, BP assigned to Acosta whatever rights it might have to goodwill damages in the condemnation proceeding.

Acosta moved for leave to file a third amended answer, and the trial court granted the motion. In the third amended answer, Acosta asserted as a further basis for the recovery of goodwill damages the assignment by BP.

Caltrans again demurred and moved to strike the amended answer. However, this time Judge McNatt overruled the demurrer.

On November 8, 2006, Caltrans moved for summary adjudication of Acosta's goodwill claim. Caltrans argued Acosta's independent right to goodwill damages is preempted by the PMPA, and BP has no goodwill claim to assign to Acosta because such claim was included in the stipulated judgment between Caltrans and BP.

On February 8, 2007, Judge Holly denied the motion for summary adjudication, concluding the PMPA does not preclude assignment of goodwill claims by a franchisor to a franchisee and there is a question of fact whether the stipulated judgment between Caltrans and BP was intended to include goodwill damages.

On February 13, 2007, Acosta filed a final demand for compensation in the amount of $705,000. Two days later, Caltrans submitted a final offer of compensation in the amount of $150,000.

Caltrans filed a motion in limine to exclude evidence of goodwill damages. Judge Holly denied the motion.

On March 26, 2008, Caltrans and Acosta entered into a stipulation for entry of judgment whereby Caltrans agreed to pay Acosta $704,500 on its goodwill claim but reserved the right to appeal the judgment with respect to issues of law. The trial court entered judgment as stipulated.

Acosta moved for an award of litigation expenses. The trial court granted the motion, concluding Acosta's final demand of $705,000 was reasonable whereas Caltrans's final offer of $150,000 was unreasonable. The court awarded Acosta $288,537.75 in litigation expenses and expert fees.

Caltrans appeals both the judgment and the order awarding litigation expenses. Acosta filed a protective cross-appeal regarding Judge Saiers's earlier rulings on the demurrers.

DISCUSSION

I

*Reconsideration of Prior Rulings**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 762.

## II

### *Federal Preemption*

■ Section 1263.510 requires compensation for the loss of goodwill by the owner of a business conducted on property taken by condemnation. However, section 2806(a)(2), of 15 United States Code (PMPA) provides: "No State or political subdivision of a State may adopt, enforce, or continue in effect any provision of law . . . that requires a payment for the goodwill of a franchisee on the termination of a franchise or nonrenewal of a franchise relationship authorized by this subchapter."

Caltrans contends section 1263.510 is preempted by section 2806 of 15 United States Code (PMPA) whenever the business at issue is a petroleum franchisee such as Acosta. Caltrans further argues that, under the PMPA, only a franchisor may claim a loss of goodwill in a condemnation proceeding, with the franchisee restricted to seeking an apportionment of goodwill damages from the franchisor.

Acosta counters that the PMPA imposes restrictions only as to the franchisor-franchisee relationship and does not prohibit the recovery of compensation from a condemner for the loss of goodwill by a franchisee, to the extent such recovery is authorized by state law.

Acosta has the better argument.

■ The doctrine of federal preemption derives from the supremacy clause of the United States Constitution, which declares that "the laws of the United States . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby, any thing in the Constitution or laws of any state to the contrary notwithstanding." (U.S. Const., art. VI, § 2.) Under the supremacy clause, federal laws preempt state laws whenever Congress so intends. (*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta* (1982) 458 U.S. 141, 152–154 [73 L.Ed.2d 664, 674–676, 102 S.Ct. 3014].)

■ Federal preemption has been recognized in three general areas: "(1) where the federal law expressly so states, (2) where the federal law is so comprehensive that it leaves ' "no room" for supplementary state regulation,' or (3) where the federal and state laws 'actually conflict[].' ([*California Federal Sav. & Loan Assn. v.*] *Guerra* [(1987)] 479 U.S. [272,] 280–281 [93 L.Ed.2d 613, 623, 107 S.Ct. 683].)" (*Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 567 [59 Cal.Rptr.2d 186, 927 P.2d 296].) As to the latter, an actual conflict arises "when 'compliance with both federal and state regulations is a physical impossibility,' [citation], or when state law

'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress . . . .' " (*Fidelity Federal Sav. & Loan Assn. v. de la Cuesta, supra*, 458 U.S. at p. 153 [73 L.Ed.2d at p. 675].) A party claiming a state statute is preempted by federal law bears the burden of so proving. (*Bronco Wine Co. v. Jolly* (2004) 33 Cal.4th 943, 956 [17 Cal.Rptr.3d 180, 95 P.3d 422].)

Section 2806 of 15 United States Code (PMPA) reads: "To the extent that any provision of this subchapter applies to the termination . . . of any franchise, or to the nonrenewal . . . of any franchise relationship, no State or any political subdivision thereof may adopt, enforce, or continue in effect any provision of any law or regulation . . . with respect to termination . . . of any such franchise or to the nonrenewal . . . of any such franchise relationship unless such provision or such law or regulation is the same as the applicable provision of this subchapter." (15 U.S.C. § 2806(a)(1).)

In addition, as previously noted, the PMPA specifically prohibits a state from enforcing any law "that requires a payment for the goodwill of a franchisee on the termination of a franchise or nonrenewal of a franchise relationship . . . ." (15 U.S.C. § 2806(a)(2).) Read literally, this latter provision would appear to preempt any state law that requires the payment of goodwill damages to a franchisee by any party in a condemnation proceeding. However, as we shall explain, this clearly was not Congress's intent.

Congress enacted the PMPA in order to regulate the relationship between franchisors and franchisees. As explained by the Seventh Circuit Court of Appeals: "Congress enacted the PMPA in an effort to protect 'franchisees from arbitrary or discriminatory termination or non-renewal of their franchises.' [Citation.] The franchise relationship in the petroleum industry is unique in that the franchisor commonly not only grants a trademark license and supplies the products but also leases the service station premises to the franchisee. As Congress noted, '[t]his relationship is, therefore, often complex and characterized by at times competing interests.' [Citation.] Congress designed the PMPA to allay three specific concerns: that franchisee independence may be undermined by the use of actual or threatened termination or nonrenewal to compel compliance with franchisor marketing policies; that gross disparity of bargaining power may result in franchise agreements that amount to contracts of adhesion; and that termination or nonrenewal may disrupt the reasonable expectations of the parties that the franchise relationship will be a continuing one. [Citation.]" (*Brach v. Amoco Oil Co.* (7th Cir. 1982) 677 F.2d 1213, 1216; see also *Simmons v. Mobil Oil Corp.* (9th Cir. 1994) 29 F.3d 505, 509; *California Arco Distributors, Inc. v. Atlantic Richfield Co.* (1984) 158 Cal.App.3d 349, 361–362 [204 Cal.Rptr. 743].)

In addition to protecting franchisees, the PMPA was designed "to provide ' "adequate flexibility so that franchisors may initiate changes in their marketing activities to respond to changing market conditions and consumer preferences." ' " (*Arbabian v. BP America* (N.D.Cal. 1995) 898 F.Supp. 703, 707; see also *California Arco Distributors, Inc. v. Atlantic Richfield Co., supra,* 158 Cal.App.3d at p. 362.)

■ Congress included in the PMPA a preemption provision in order "to provide national uniformity of petroleum franchise termination law." (*In re Herbert* (9th Cir. 1986) 806 F.2d 889, 892.) "[F]ranchisors and franchisees must bear the consequences of potential preemption in mind when conducting business, and must minimize the risks associated with preemption by channeling their behavior so that it conforms to the provisions of the PMPA." (*Arbabian v. BP America, supra,* 898 F.Supp. at p. 707.)

Consistent with the foregoing, section 2802 of 15 United States Code (PMPA) regulates the termination or nonrenewal of petroleum franchises. (15 U.S.C. § 2802.) It specifies the permissible grounds for termination or nonrenewal, including failure to comply with the terms of the franchise (15 U.S.C. § 2802(b)(2)(A)) and "[t]he occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable . . ." (15 U.S.C. § 2802(b)(2)(C)). Within the meaning of the latter is the "condemnation or other taking, in whole or in part, of the marketing premises pursuant to the power of eminent domain." (15 U.S.C. § 2802(c)(5).)

■ In the event of termination of a franchise due to condemnation of the marketing premises, section 2802(d)(1) of 15 United States Code (PMPA) provides that "the franchisor shall fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will . . . ." (15 U.S.C. § 2802(d)(1).)

Caltrans argues the foregoing provision "specifies that only a motor oil franchisor can make a claim for goodwill in a condemnation case," with the franchisee restricted to an equitable share of any award of goodwill to the franchisor. Caltrans cites as support *Bajwa v. Sunoco, Inc.* (E.D.Va. 2004) 320 F.Supp.2d 454, 459 (*Bajwa*), where the court said: "The PMPA does not entitle a franchisee to compensation from the owner for his leasehold in the event of a condemnation; the act only requires that 'the franchisor shall fairly apportion between the franchisor and the franchisee compensation, if any, received by the franchisor based upon any loss of business opportunity or good will.' [Citation.] Virginia law does not compensate the property owners for loss of business opportunity or good will. [Citation.] The sale price

received by Sunoco, therefore, could not have contained compensation for business opportunity or good will. Accordingly, the PMPA does not require that Sunoco share the sale price with Bajwa. No other provision of the PMPA provides for compensation to Bajwa."

*Bajwa* is inapposite. The federal court indicated only that the PMPA itself does not provide an independent ground for the recovery of goodwill by a franchisee except where a franchisor has recovered goodwill damages. However, the court did not say state law cannot provide for the recovery of such damages by a franchisee. In *Bajwa*, Virginia law did not provide for the recovery of such damages. However, California law does.

■   Consistent with the underlying purposes of the PMPA to regulate the relationship between franchisors and franchisees, the PMPA establishes no limit on the payment of compensation by third party condemners. Section 2802(d)(1) of 15 United States Code (PMPA) provides only that, in the event the franchisor recovers goodwill damages in connection with a condemnation proceeding, such damages must be "fairly apportion[ed]" between the franchisor and franchisee. It says nothing about whether a franchisee may recover a separate award from a condemner.

■   Of course, to the extent a condemner pays compensation to a franchisor that is intended to include the loss of goodwill by a franchisee, the condemner could defend against a duplicate award to the franchisee on that basis. However, this would be a matter of state condemnation law, not federal preemption. We conclude the trial court properly determined Acosta is entitled to recover goodwill damages under section 1263.510, notwithstanding the PMPA.

In light of our conclusion in this regard, we need not consider Acosta's challenge to the two earlier rulings of Judge Saiers.

III

*Litigation Expenses*

Acosta submitted a final demand in the amount of $705,000 and Caltrans submitted a final offer in the amount of $150,000. Following entry of the stipulated judgment, Acosta moved for an award of litigation expenses in the amount of $281,264 plus expert witness fees of $7,237.75. The trial court granted the motion and awarded total litigation expenses and expert fees in the amount of $288,537.75.

In its order, the court concluded the final offer of Caltrans had been unreasonable, whereas the final demand of Acosta had been reasonable. In

particular, the court found the Caltrans offer unreasonable "in that (a) the Purported Final Offer is only twenty-one percent of the $704,5000 [*sic*] awarded pursuant to the Stipulated Judgment; (b) the Purported Final Offer is seventy-eight percent lower than Acosta's Final Demand; (c) the Purported Final Offer is $555,000 less than Acosta's Final Demand and $554,000 less than the $704,500 award pursuant to the Stipulated Judgment; and (d) that the Purported Final Offer is only twenty-two percent of the $678,000 appraisal figure arrived at by Caltrans' appraiser; and (3) [*sic*] that Caltrans failed to proceed with good faith, care and accuracy in making its Purported Offer."

Caltrans contends the trial court erred in concluding the $150,000 offer was unreasonable, inasmuch as the offer was made at a time after the court had ruled Acosta's goodwill claim was preempted by the PMPA and before the court reversed directions and denied Caltrans's motion in limine to exclude goodwill evidence. Caltrans further contends the court improperly relied solely on the numeric difference between the offer and the final judgment in reaching its decision.

An award of litigation expenses in an eminent domain proceeding is governed by section 1250.410. It reads, in relevant part:

"(a) At least 20 days prior to the date of the trial on issues relating to compensation, the plaintiff shall file with the court and serve on the defendant its final offer of compensation in the proceeding and the defendant shall file and serve on the plaintiff its final demand for compensation in the proceeding. The offer and the demand shall include all compensation required pursuant to this title, including compensation for loss of goodwill, if any, and shall state whether interest and costs are included. These offers and demands shall be the only offers and demands considered by the court in determining the entitlement, if any, to litigation expenses. . . .

"(b) If the court, on motion of the defendant made within 30 days after entry of judgment, finds that the offer of the plaintiff was unreasonable and that the demand of the defendant was reasonable viewed in the light of the evidence admitted and the compensation awarded in the proceeding, the costs allowed pursuant to Section 1268.710 shall include the defendant's litigation expenses. [¶] . . . [¶]

"(e) As used in this section, 'litigation expenses' means the party's reasonable attorney's fees and costs, including reasonable expert witness and appraiser fees."

The underlying purpose of the foregoing provision "is to encourage settlement of condemnation actions by providing incentives to a party who

submits a reasonable settlement offer or demand before trial. [Citations.] 'A property owner who files a reasonable demand, but is required nonetheless to litigate because of the public agency's unreasonable position, can be fully compensated for his [or her] litigation expenses. Conversely, a condemnor [*sic*] who makes a timely reasonable offer may avoid having to pay the property owner's expenses except for taxable costs.' [Citation.]" (*People ex rel. Dept. of Transportation v. Yuki* (1995) 31 Cal.App.4th 1754, 1763 [37 Cal.Rptr.2d 616].)

■ The following factors have been recognized as general guidelines for determining the reasonableness of offers and demands: " ' "(1) the amount of the difference between the offer and the compensation awarded, (2) the percentage of the difference between the offer and award . . . and (3) the good faith, care and accuracy in how the amount of offer and the amount of demand, respectively, were determined." ' [Citation.] Thus, the mathematical relation between the condemner's highest offer and the award is only one factor that should enter into the trial court's determination. [Citations.]" (*Los Angeles County Metropolitan Transportation Authority v. Continental Development Corp.* (1997) 16 Cal.4th 694, 720 [66 Cal.Rptr.2d 630, 941 P.2d 809].)

Caltrans contends the present matter is factually similar to *San Diego Metropolitan Transit Development Bd. v. Cushman* (1997) 53 Cal.App.4th 918 [62 Cal.Rptr.2d 121] (*Cushman*). In *Cushman*, the transit board filed a complaint in eminent domain to obtain 6,425 square feet of property owned by the defendants and deposited $91,770 with the county treasurer as just compensation. The defendants made a final demand for severance damages of $355,000, and the transit board made a final offer of $154,000. The jury ultimately awarded the defendants $322,217 in severance damages, for a total judgment of $415,797. The trial court denied the defendants' motion for litigation expenses. (*Id.* at pp. 923–925.)

The Court of Appeal affirmed the denial of litigation expenses. The court explained:

"We acknowledge that based strictly on the numbers, SMTDB's final offer was significantly disproportionate to the ultimate award. The final offer of $154,000 was $261,797 less than the award or only 37 percent of the award. Cushman's final demand of $355,000, on the other hand, was only $60,797 less than the award; the final demand was approximately 85 percent of the award.

"Nonetheless, . . . [¶] '[s]ection 1250.410 requires the trial judge to do more than just compare numbers. The 1975 statutory amendment enacting

section 1250.410 directs the trial judge in determining whether to award litigation expenses to consider all the evidence admitted, not just the numerical amounts of the offer, demand and award. The statute calls on the trial judge to make a discretionary determination of reasonableness after weighing all the evidence and assessing witness credibility independently of the jury.

" ' "[T]he mathematical relation between the plaintiff's highest offer and the award is but one factor to be considered by the trial court under the new statute. . . ." ' [Citations.]

"Here the parties settled most of the lawsuit before trial. The only issue tried was the amount of severance damages. This factor in itself shows the parties acted in good faith in attempting to settle the lawsuit. Moreover, the parties differed not in their numerical valuations but on the purely legal issue of whether any severance damages was owed. Because the dispute was a legal one, the trial court was justified in giving greater importance to the good faith factor." (*Cushman, supra*, 53 Cal.App.4th at pp. 932–933.)

To the same effect is *Escondido Union School Dist. v. Casa Suenos De Oro, Inc.* (2005) 129 Cal.App.4th 944 [29 Cal.Rptr.3d 89] (*Escondido*), where the parties differed on a complex legal issue rather than the proper valuation of the property. In affirming the denial of litigation expenses, the Court of Appeal said: "In our view, the trial court's finding of reasonableness was supported by substantial evidence. We acknowledge that if our review was based strictly on the numbers, District's revised final offer of $200,000 was significantly disproportionate to the ultimate award and was only slightly more than half of Casa Sueños's final demand. [Citation.] However, this case was more about the legal issue of whether the manufactured homes were 'improvements to the realty' under section 1263.210 than it was about numbers. This legal issue was the crux of the parties' disagreement. District's stance that the manufactured homes were not 'improvements pertaining to the realty' because they did not have certificates of occupancy was not unreasonable. The question of applying Health and Safety Code section 18551 to condemnation law was a novel issue, and arguments in support of applying it were by no means frivolous. A condemning agency need not 'compromise its legal position just to avoid litigation.' [Citation.]" (*Id.* at p. 986.)

Caltrans argues the present matter, like *Cushman* and *Escondido*, involved a legal dispute over whether Acosta is entitled to goodwill damages at all rather than the amount of such damages. Caltrans further argues that, like the condemning agencies in *Cushman* and *Escondido*, it was not required to compromise its legal position in order to avoid litigation.

There is a significant difference between *Cushman* and *Escondido*, on the one hand, and the present matter. In those cases, the trial court *denied*

litigation expenses, concluding the condemning agency had acted in good faith under the circumstances and this factor outweighed the difference between the final offer and the award. The Court of Appeal in both cases concluded the trial court's determination in this regard was supported by substantial evidence. (*Escondido, supra*, 129 Cal.App.4th at p. 987; *Cushman, supra*, 53 Cal.App.4th at p. 934.) Here, the trial court reached the opposite conclusion, finding Caltrans had not acted in good faith with respect to its final offer.

In reviewing a decision on a motion for litigation expenses in an eminent domain proceeding, "our task is not to determine whether the [condemner]'s offer was reasonable. That was the task of the trial court. On appeal the trial court's decision must be upheld if supported by substantial evidence. [Citation.] 'The measure of reasonableness is in the first instance a factual matter for the trial court,' unless 'the uncontradicted evidence permits only one conclusion . . . .' [Citation.]" (*People ex rel. Dept. of Transportation v. Yuki, supra*, 31 Cal.App.4th at p. 1765.) "The common thread that runs through the case law . . . is the deference the reviewing court pays to the trial court's decision." (*Glendale Redevelopment Agency v. Parks* (1993) 18 Cal.App.4th 1409, 1416 [23 Cal.Rptr.2d 14].)

In this matter, there was little dispute over the value of Acosta's goodwill claim. Caltrans's appraiser arrived at a value of $678,000, while Acosta's appraiser put the value at $731,000. The dispute all along was over whether Acosta was entitled to recover goodwill damages in light of the PMPA.

Caltrans argues: "Despite the lack of any legal basis to claim goodwill at the time of the final offer, Acosta's final demand was for over $700,000.00. While Caltrans had no legal liability under the Court's rulings as of the date of the exchange, Caltrans still offered $150,000.00. It was only after the Court reversed the earlier rulings in this matter *sua sponte*—after the exchange of final offer—that Acosta gained any basis to claim goodwill. Plaintiff could not have anticipated such a *sua sponte* ruling from the Court."

Caltrans misstates the procedural history in this matter. Acosta's initial answer, as amended, asserted a right to damages for loss of goodwill. Caltrans demurred and moved to strike the answer, asserting Acosta has no right to goodwill damages in light of the PMPA. Judge Saiers sustained the demurrers. Acosta filed a second amended answer, again asserting a right to goodwill damages. Caltrans again demurred and moved to strike the answer, and Judge Saiers again sustained the demurrers.

Effective September 27, 2005, BP assigned to Acosta any rights it may have had to recover goodwill damages from Caltrans. On December 5, 2005,

Caltrans and BP entered into a stipulation for interlocutory judgment in condemnation whereby Caltrans agreed to pay BP $675,000. The stipulation further provided that the payment of such sums shall be in full payment for BP's claim for compensation. The trial court entered judgment accordingly.

Acosta filed a third amended answer, asserting both a right to goodwill damages in its own right and a right to such damages as an assignee of BP. Once again, Caltrans filed a demurrer and motion to strike regarding the goodwill claim. However, this time Judge McNatt overruled the demurrer and denied the motion to strike.

On November 8, 2006, Caltrans filed a motion for summary adjudication on the goodwill claim, again asserting federal preemption. Judge Holly denied the motion, concluding BP had assigned its right to seek goodwill damages to Acosta and issues of fact remain as to whether the stipulated judgment between Caltrans and BP included any claim BP might have to goodwill damages.

It was only after the foregoing, on February 13, 2007, that Caltrans submitted its final offer of compensation in the amount of $150,000.

Notwithstanding Judge Saiers's earlier rulings, by the time of Caltrans's final offer, the trial court had twice ruled Acosta's goodwill claim was not precluded in this matter. Furthermore, as explained in the preceding section, it is abundantly clear the PMPA was never intended by Congress to regulate the obligation of third party condemners to pay goodwill damages to franchisees. Hence, there was a strong basis for Caltrans to factor the possibility of such a recovery into its final offer.

Notwithstanding the foregoing, Caltrans's final offer to Acosta was less than one-fourth of the value placed on Acosta's goodwill by Caltrans's own appraiser. There was evidence in the record suggesting that, at the time of its initial demurrer in this matter, Caltrans did not expect its preemption argument to prevail. Although the argument gained currency with Judge Saiers, by the time of the final offer Judge Saiers was no longer on the case and the two most recent rulings by the trial court were in favor of Acosta's goodwill claim.

Caltrans was not required to abandon its preemption argument in order to avoid litigation. Nevertheless, it was required to make a good faith offer based on the likelihood of ultimately prevailing on the issue. The trial court concluded that, under the circumstances, Caltrans "failed to proceed with good faith, care, and accuracy" with respect to the final offer. In light of the deference owed to the trial court in this regard, we conclude substantial evidence supports that determination.

## DISPOSITION

The judgment is affirmed. Acosta is entitled to costs on appeal. Acosta is also entitled to litigation expenses on appeal, with the amount to be determined by the trial court. (See §§ 1235.140, 1250.410, 1268.720; *Poway Unified School Dist. v. Chow* (1995) 39 Cal.App.4th 1478, 1485–1486 [46 Cal.Rptr.2d 651].)

Nicholson, Acting P. J., and Butz, J., concurred.